## OHIO VALLEY COFFIN COMPANY v. GOBLE.

[No. 3,921.    Filed February 18, 1902.]

MASTER AND SERVANT.—*Personal Injuries.*—*Defective Premises.*—*Knowledge.*—*Complaint.*—Under the rule requiring a servant in an action for personal injuries caused by defective appliances to allege in his complaint, not only that he was free from fault, but that the risk was one not knowingly assumed as an incident of the service, an averment in a complaint in an action for an injury caused by a defective passageway that plaintiff "believed" it was safe is insufficient, where it was alleged that the passageway had become unsafe, and, upon notice thereof given by plaintiff, defendant repaired same by moving a worn and defective board from one end of the passageway to the other end, the defective board being as plainly visible at one end of the passageway as at the other.

From Dearborn Circuit Court; *G. E. Downey*, Special Judge.

Action by Martin Goble against the Ohio Valley Coffin Company for damages for personal injuries. From a judgment for plaintiff, defendant appeals. *Reversed.*

*G. M. Roberts, W. R. Johnston, B. K. Elliott, W. F. Elliott,* and *F. L. Littleton,* for appellant.

*C. W. McMullen, H. D. McMullen, H. R. McMullen, W. N. Hauck* and *M. J. Givan,* for appellee.

WILEY, J.—Action by appellee, as plaintiff, against appellant, to recover damages for a personal injury which he sustained while engaged in the service of appellant as an employe, which injury, it was alleged, was the result of appellant's negligence. Answer in denial, jury trial, verdict and judgment for appellee in the sum of $5,000. Appellant's demurrer to the complaint and its motion for a new trial were overruled, and these rulings are assigned as errors.

The case was tried on the second paragraph of complaint, and we will first consider its sufficiency. The complaint is very lengthy, but the material averments may be stated as

follows: Appellant is a corporation engaged in manufacturing coffins and burial caskets. It owns and operates a large plant at Lawrenceburg, Indiana. Its factory building is a large brick building abutting Ash street, which is a public street in said city. The rear end of the building had been used for many years for a planing room and was so used at the time appellee was injured. Appellant owned a tract of land on the west side of High street and on the south side of Ash street, which tract of land was used by it for a lumber yard. The first floor of the factory building is about three feet higher than the street. For many years appellant had maintained a passageway leading from Ash street into the factory building. This passageway was built and maintained for the purpose of being used by appellant's employes, over which such employes had to carry lumber from said lumber yard into the planing room. This passageway was constructed of boards laid on stringers, which extended across the gutter on Ash street. The stringers extended across the gutter on Ash street next to the factory building, and the plank boards, which were two inches thick and ten inches wide, rested at each end upon said stringers. This passageway was eight feet in length, and, at its end next to the building, steps were constructed leading up to the first floor, where the planing room was located. The complaint avers that this passageway from long use had become unsafe; that in January, 1899, appellee complained to appellant of the unsafe condition thereof, and informed it that it was unsafe; that thereupon appellant repaired it and that appellee "believed it was made safe"; that the board on the passageway at the end next to the street was originally ten inches wide, two inches thick, and eight feet long, but from long use had become worn and rotten, so that, when it rested on the stringers at each end, that part of the board resting on the stringers was only five inches wide at each end, and that part of the board which was rotten and broken off at each end thereof was six inches long

and five inches wide; that when appellant repaired the passageway, it removed said rotten and worn board from the end of the way next to Ash street, and placed it at the other end, next to the building, within ten inches of the first step leading to the first floor, and negligently failed to nail said board to the stringers or otherwise secure it so as to prevent it from tipping up or turning over when pressure was made on the side where the parts were broken and rotten. The complaint does not aver the exact date when appellee notified appellant that the passageway was unsafe, nor the exact date when the same was repaired, but it was in January, 1899. It is averred that for more than five years immediately preceding the injury appellee had been in appellant's employment, and that a part of his duty was to carry lumber from the lumber yard across this passageway into the factory. It is shown that he was injured February 23, 1899. After setting out with particularity the condition of the passageway both before and after its repair, the complaint avers that appellee did not know until after he was injured that the rotten and worn board above described had been moved and placed in another part of the said passageway; that the stringers did not furnish a solid place on which the ends of the board could rest; that appellant knew that the passageway was unsafe; that the appellee "in the use of said passageway used due care and caution; that he believed, from the appearance of said passageway as it was repaired as aforesaid, and from the fact that it was repaired, and from the fact that it had been repaired, that it was safe, and that he could use the same without danger"; that while engaged in carrying lumber over said passageway on the 23rd of February, 1899, he was injured by the said board of said passageway turning up and causing him to fall under a heavy plank which he was carrying; "that in passing over said defective way, carrying said lumber, he exercised due care and caution and took all precaution possible to take in his performance of said labor, believing that by so doing the

platform was sufficiently strong to enable him to pass over the same safely;" that the turning of said board caused him to fall and receive the injuries for which he sues; that "at the time he was injured, as alleged, he was exercising due care and discretion in passing over and upon said way, and could not and did not appreciate any immediate danger in passing thereon."

"It is a rule of universal acceptance by the courts of this country that an employe assumes all the ordinary dangers of his employment, which are known to him, or which by the exercise of ordinary diligence could have been known to him." *Pennsylvania Co.* v. *Ebaugh*, 152 Ind. 531; *Chicago, etc., R. Co.* v. *Glover*, 154 Ind. 584, and authorities there cited.

In a case of this character it is incumbent upon the plaintiff to show by the allegations of his complaint, not only that he was free from fault, but the risk was one not knowingly assumed as an incident of the service. If in this case appellee had knowledge or notice, either actual or implied, of the defective and dangerous way over which he had to pass in the discharge of his duty to appellant, and with such knowledge voluntarily proceeded to use the way, then these conditions became a risk which he voluntarily assumed. It follows that, in order to establish a breach of duty creating a cause of action against appellant, it was necessary to allege that appellee had no knowledge of or notice of the defective way that caused his injury. See, *Cleveland, etc., R. Co.* v. *Parker*, 154 Ind. 153, and authorities there cited.

A master is required to exercise reasonable care to provide reasonably safe working places, appliances, and machinery for his servants; but in suits by the servant against the master for his negligent failure to furnish a safe place in which to work, or safe appliances or machinery with which to work, the law must now be regarded as settled that knowledge on the part of the servant is an independent element of liability, not included in the general averment of

negligence or want of negligence. In such case, where a recovery is sought for the master's neglect of his duty with reference to a safe place to work, etc., knowledge of the defect by the master, and want of knowledge by the servant, must be affirmatively shown by the complaint. *New Kentucky Coal Co.* v. *Albani,* 12 Ind. App. 497.

The servant's knowledge or want of knowledge must be specially alleged, because upon this depends whether or not he is to be held to have assumed the risk of the defect; assumption of the risk and contributory negligence being separate and independent factors. *New Kentucky Coal Co.* v. *Albani, supra.*

The rule is that what the employer specially engages is that he will not expose the employe to danger which is not obvious, or of which the latter has no knowledge or adequate apprehension, and which is not reasonably and fairly incident to and within the ordinary risks of the service which he engaged to perform. *Guedelhofer* v. *Ernsting,* 23 Ind. App. 188; *Jenney Electric, etc., Co.* v. *Murphy,* 115 Ind. 566.

It necessarily follows from these authorities that if the employe has knowledge, or might have had knowledge by the exercise of ordinary care, of the unsafe place where he is working, or of the dangerous or unsafe condition of machinery or appliances with which he is working, and continues in the service of the master, in the absence of a promise to repair or make safe, then the servant assumes the risk incident to such conditions as well as the risk of any hazardous employment. Under the rules so firmly established, the complaint before us must be held bad if it fails to aver that appellee did not have knowledge of the unsafe condition of the passageway over which he was required to pass in the discharge of his duties.

It is clear that there is no direct averment of want of knowledge. The extremest limit to which the complaint goes is to aver that, after the appellant had repaired the

way, appellee "believed" it was safe. If we can say that the word "believe" is equivalent to an averment that appellee was without knowledge of the defect, either actual or constructive, then the complaint in this respect must be held to be sufficient.

The meaning of the words "believe" and "knowledge", as defined by lexicographers will show that there is a distinct and well defined difference between them. "Believe": "To exercise trust or confidence".—Webster. "To exercise belief in; to be persuaded upon evidence, arguments, and deductions, or by other circumstances other than personal knowledge".—Century Dict. "Knowledge": "The act or state of knowing; clear perception of fact; that which is or may be known".—Webster. "Acquainted with things ascertained or ascertainable; specific information".—Century Dict. We do not think it is necessary for us to attempt to enlarge upon the meaning of these words as above defined.

The Supreme Court of the United States in the case of *Iron Silver Mining Co.* v. *Reynolds,* 124 U. S. 374, 8 Sup. Ct. 598, 31 L. Ed. 466, said: "Between mere belief and knowledge there is a wide difference". This expression of Mr. Justice Field, was used in criticising and holding erroneous an instruction of the United States Circuit Court for the district of Colorado, in which the words "belief" and " knowledge" were used interchangeably as conveying the same meaning, and it was said: "The court could not make them synonymous by its charge".

The most liberal construction which can be given this pleading, under the allegations as to appellee's belief or knowledge, is that appellee believed that if he took all the caution possible the platform or passageway was sufficiently strong to pass over the same safely. This language necessarily implies the antithesis of the proposition that if he did not use all possible care and caution he could not pass over it in safety, and implies that its condition, as known to

him, was such as to require extraordinary care and caution. This condition, as it must have been known to him, was a warning of possible danger.

Appellee's complaint is strongly against him on the question of knowledge. He avers that in January he notified appellant of the dangerous condition of the way; that the board on the walk next to the street had, from long use, become worn and rotten; that said board was originally ten inches wide; that at each end, by decay, etc., it had become only five inches wide, and that the decayed and missing part of the board was on the same side at both ends, and that when appellant repaired the way this defective board had been taken from the end of the way next to the street and placed at the other end next to the building, and within ten inches of the steps.

The complaint does not state when the repairs were made, but it is fair to assume that they were made upon receiving notice of the defective condition of the platform. This was in January, and appellant's injury occurred February 23rd, following. He had been in the constant employment of appellant for over five years, and was passing over this passageway daily. Removing the defective board from one end of the platform to the other could not make the defect less apparent. The defective board, to the ordinary observer, was as plainly visible at one end of the passageway as at the other. A man with ordinary vision, with due regard for his safety, is required to use his sight as to where he is going and the character of the way over which he passes. The defect in the passageway over which appellee was required to pass daily in the discharge of his duties to his master was open and obvious, and appellee was chargeable with a knowledge of its condition. This being true, and his failure to aver a want of knowledge, he is chargeable with the assumption of the obvious risks incident to the character of the service in which he was engaged. The conclusion is irresistible that the complaint is insufficient.

This makes it unnecessary to examine and decide questions presented by overruling the motion for a new trial.

Judgment reversed, and the court below directed to sustain the demurrer to the complaint.