Oconto County, Appellant, vs. MacAllister and others, Respondents. [Three cases.]

*October 8, 1913—January 13, 1914.*

*Official bonds: County treasurer: Sealed instruments: Lack of scroll: Limitation of actions: Statutes: Construction: Definitions: "Knowledge" of default, etc.: What constitutes: Records of county: Examination: Fraud and concealment: Pleading.*

1. An instrument in the form of a bond which was executed by a county treasurer and sureties under a statute in terms requir-

Oconto County v. MacAllister, 155 Wis. 286.

ing a bond, and which expressly states upon its face that it is sealed with the seals of the signers, must be considered a sealed instrument, although there is no scroll or other indication of a seal after the signatures.

2. The time within which an action must be commenced on the bond of a county treasurer was fixed by sec. 4220, R. S. (1878), at twenty years; and by virtue of sec. 4976, R. S. (1878) and Stats. (1898 and 1911), the same limitation continued to be applicable to a cause of action which accrued prior to the enactment of ch. 268, Laws of 1893, unless at the time of such enactment the county had had for three years notice and knowledge that there was a default in the conditions of the bond and that it was entitled to recover thereunder, in which case the time was shortened to ninety days.

3. Ch. 268, Laws of 1893, provided for such actions a limitation of three years after the county had notice and knowledge as stated, but, there being no provision to the contrary, the twenty-year limitation of sec. 4220 continued by virtue of sec. 4976 to be applicable to causes of action accruing after the enactment of said ch. 268 and prior to the revision of 1898, where the county did not have such notice and knowledge.

4. By the revision of 1898, ch. 268, Laws of 1893, became sec. 984 of the Statutes, and was amended by dropping the words "notice and" therefrom, so as to require "knowledge" only, and at the same time sec. 4220 was changed so as to expressly except from it the official bonds mentioned in said sec. 984, thereby leaving the limitation prescribed in that section the only one in force applicable to causes of action thereafter accruing upon such bonds.

5. In the construction of statutes, the subject of the legislation, the context, the associated words, and the mischiefs which the particular statute was intended to guard against, as well as the consequences of a particular interpretation, all factors in arriving at correct results, make mere judicial definitions of particular words used in a different connection and with reference to a different subject of quite subordinate, if of any, importance as aids.

6. Knowledge is more than notice, and may or may not flow from notice; and knowledge of a municipal corporation is quite distinguishable from knowledge on the part of a natural person or a business corporation.

7. A county is not chargeable with "knowledge" (within the meaning of ch. 268, Laws of 1893, or sec. 984, Stats.) of everything that an inspection of the books and records in the treasurer's office would disclose.

8. Especially would it not be chargeable with knowledge of the

contents of duplicate receipts for taxes collected, which were never countersigned as required by law nor filed with the county. clerk, as also required, but were retained by the county treasurer in his own files where they had no legal right to be.

9. Knowledge of the failure of the treasurer to have such duplicate receipts countersigned and to file them with the clerk does not necessarily include knowledge that the county "was damaged because thereof," within the meaning of sec. 984, Stats.

10. A county is not chargeable with knowledge of collections made by the treasurer of delinquent taxes before sale, from the mere fact that he indorsed the same upon the delinquent tax return kept in his office, the statute not requiring such indorsement, but a different record in another office and in a different form.

11. If fraud and false entries are resorted to by a county treasurer for the purpose of concealing a default, and he thereby does successfully conceal it from the county officers charged with the duty of investigating, without negligence on their part, the county is not chargeable, as matter of law, with knowledge of the default, even though it might have been discovered by expert examination.

12. But if such officers might from the lawful records, by a cursory investigation, have discovered the default, or if the lawful records on their face plainly show the default, or if actual knowledge is brought home to the officers charged with the duty of examination and accounting, at the time of such examination and accounting—in all cases excluding the delinquent officer,—the county would have knowledge within the meaning of the statute.

13. Lack of knowledge, under the statute, is sufficiently averred in a complaint upon a county treasurer's bond which alleges false entries by the treasurer in his books and false reports of moneys collected by him, made for the purpose of concealing and which did in fact conceal from the plaintiff and its county board the withholding of funds by him, and that neither the county nor its board of supervisors had, prior to a certain date, notice or knowledge of any default in the condition of the treasurer's bond or that the county was entitled to recover thereon.

APPEALS from judgments of the circuit court for Oconto county: S. D. HASTINGS, Judge. *Reversed.*

For the appellant there was a brief by *Adolph P. Lehner,* district attorney, and *John B. Chase,* assistant district at-

torney, and oral argument by *Mr. Chase.* As to the meaning of the word "knowledge" in the statutes in question, they cited *Utley v. Hill,* 155 Mo. 232, 55 S. W. 1091, 49 L. R. A. 323; *Fidelity & C. Co. v. Gate City Nat. Bank,* 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 82; *McMullen v. Winfield B. & L. Asso.* 64 Kan. 298, 67 Pac. 892, 56 L. R. A. 924; *Perry v. Smith,* 31 Kan. 423, 2 Pac. 784; *Moore v. Waco B. Asso.* 19 Tex. Civ. App. 68, 45 S. W. 974; *Lieberman v. First Nat. Bank,* 8 Del. Ch. 519, 45 Atl. 901, 48 L. R. A. 514; *Frederick v. Douglas Co.* 96 Wis. 411, 423, 71 N. W. 798; *McMahon v. McGraw,* 26 Wis. 614; *Fox v. Zimmermann,* 77 Wis. 414, 46 N. W. 533; *Raymond v. Schriever,* 63 Neb. 719, 89 N. W. 308; *Sexton v. Richland Co.* 27 Wis. 349; *Cady v. Bailey,* 95 Wis. 370, 70 N. W. 285; *Boardman v. Flagg,* 70 Mich. 372, 38 N. W. 284; *Mower Co. v. Smith,* 22 Minn. 97. The instrument, though containing no scroll or other device for a seal, is nevertheless an official bond and a sealed instrument. *Platteville v. Hooper,* 63 Wis. 381, 23 N. W. 581; *Kollock v. Parcher,* 52 Wis. 393, 9 N. W. 67; *Oconto Co. v. Hall,* 42 Wis. 59; *Sacramento Co. v. Bird,* 31 Cal. 66; *Saline Co. v. Sappington,* 64 Mo. 72; *People v. Groat,* 22 Hun, 164; *People v. Lowber,* 7 Abb. Pr. 158; *First Nat. Bank v. Briggs' Assignees,* 69 Vt. 12, 37 Atl. 231, 37 L. R. A. 845; *Rutland v. Paige,* 24 Vt. 181; 5 Cyc. 729; *McCarley v. Tippah Co.* 58 Miss. 483, 38 Am. Rep. 338; *State v. Fredericks,* 8 Iowa, 553; *State v. Smith,* 87 Miss. 551, 40 South. 22; *Wilcox v. Perkins Co.* 70 Neb. 139, 97 N. W. 236; *Lehigh Co. v. Gossler,* 24 Pa. Super. Ct. 406.

For the respondents there was a brief by *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *J. R. North* and *J. V. O'Kelliher.* They contended, *inter alia,* that the so-called bond, not being under seal, must be treated as a mere common-law obligation and subject to the six-year limitation of sub. 3, sec. 4222, Stats. The fact that

the instrument recites that the signers have set their hands and seals to it, when in fact it is not sealed, does not make it a sealed instrument as the statutes contemplate. *Davis v. Judd,* 6 Wis. 85; *Taylor v. Glaser,* 2 Serg. & R. 502; *Chilton v. People,* 66 Ill. 501; *Davis v. Bingham,* 39 Misc. 299, 79 N. Y. Supp. 469; 25 Am. & Eng. Ency. of Law (2d ed.) 76; *Boothbay v. Giles,* 68 Me. 160. The county is charged with notice and knowledge of the treasurer's default in the conditions of his bond, and that it is entitled to recover thereunder, in case the books, records, and papers in the county treasurer's or county clerk's offices—which the county board was required to examine in order to properly and truthfully audit the treasurer's accounts and settle with him annually as treasurer—show that he failed to account for the moneys he is charged with having received and converted to his own use. It must be conclusively presumed that the county board had knowledge of the facts which show the default, and that the county was entitled to recover therefor, and a denial of knowledge of the default is ineffectual to contradict such presumed knowledge. *Black v. Black,* 64 Kan. 689, 68 Pac. 662; *Lewis v. Duncan,* 66 Kan. 306, 71 Pac. 577, and cases cited; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360, 362, 363; *Garfield Co. v. Renshaw,* 23 Okla. 56, 99 Pac. 638; *Lataillade v. Orena,* 91 Cal. 565, 27 Pac. 924, 926, 927; *Wood v. Carpenter,* 101 U. S. 135, 140, 141, 25 L. ed. 807; *Laird v. Kilbourne,* 70 Iowa, 83, 30 N. W. 9; *Dearborn Co. v. Lods,* 9 Ind. App. 364, 36 N. E. 772, 773; *O'Dell v. Burnham,* 61 Wis. 562, 569, 570, 21 N. W. 635; *Ludington v. Patton,* 111 Wis. 208, 242, 86 N. W. 571; *State v. C. & N. W. R. Co.* 132 Wis. 345, 360, 112 N. W. 515; *Shelby Co. v. Bragg,* 135 Mo. 291, 36 S. W. 601; *State ex rel. Bell v. Yates,* 231 Mo. 276, 132 S. W. 672; *Mecosta Co. v. Vincent,* 65 Mich. 503, 507, 33 N. W. 44; 19 Am. & Eng. Ency. of Law (2d ed.) 251.

The following opinion was filed October 28, 1913:

TIMLIN, J.　In each of these three actions the appellant county, seeks to recover from the county treasurer, *MacAllister,* and the sureties on his official bond.　In each the complaint was demurred to, the demurrer sustained, and thereafter judgment entered in favor of the defendants.　In each the complaint, except as to dates, omission of scroll hereinafter mentioned, and names of sureties, is identical.　One synopsis of the complaints is sufficient to show the questions arising in each.

The complaint averred that *MacAllister* was county treasurer of the appellant, and the other respondents the sureties on his official bond.　The town, city, and village treasurers in a given year returned a stated amount of taxes delinquent, and the county treasurer in that year collected a stated amount of such taxes with interest and fees, after the delinquent return and prior to the tax sale, and also collected a stated amount of interest and fees in other cases where the lands were sold at tax sale.　Part but not all of the moneys so collected were paid over by the county treasurer.　These averments are repeated for each year of each term with a difference only in amounts and dates.　The remainder due is stated.　It is further averred that while treasurer respondent failed and omitted to make or cause to be countersigned or to file or cause to be filed with the county clerk the duplicate receipts required by sec. 1129, Stats.; that he failed to make entries in his books of account of the sums so received, but did in fact enter in said books for such receipts a less sum than that received; that he entered in said books a false statement of the actual amount of interest and fees and a false statement of the actual amount of the face of the tax going to make up the aggregate of the tax certificates carried in his certificate account, thus making it

appear that the aggregate sum evidenced by certificates of sale contained a greater amount than it actually contained and therefore a less amount of interest and fees than he actually received. In each year the treasurer made and filed an annual report containing false statements of the amount of these delinquent taxes, interest, and fees collected by him. All of these omissions and false entries were for the purpose of concealing from the plaintiff and its county board the fact of the treasurer withholding said funds, and the false entries and omissions did conceal this fact. That neither the plaintiff county nor its board of supervisors or any member of the latter had prior to August 29, 1910, notice or knowledge that there was any default in the condition of the treasurer's bond or that the county was entitled to recover thereon, and the appellant and its county board of supervisors had no knowledge or information that the treasurer had failed to account as required by law or that he had unlawfully converted said sums of money or any part thereof. Demand upon respondent *MacAllister* was made before the commencement of this action and on November 19, 1910, but he neglected and refused, etc. Judgment for a stated sum is asked.

By stipulation of counsel we are also to treat the complaint as if it contained an allegation to the effect that the treasurer, in receiving before sale a payment of taxes returned delinquent, entered the fact and date of such payment on the proper delinquent return opposite the tax so returned delinquent and the description of land on which such taxes were assessed or the name of the person paying delinquent personal property taxes, together with a reference by number to the duplicate receipt for such payment, also numbered and kept on file in the said county treasurer's office—which duplicate receipt showed in each case the tax collector's fees, interest charged, and advertising fee if any included in such payment. The complaint avers that *MacAllister* entirely

omitted and failed to make or cause to be countersigned by the county clerk or to file in the office of the county clerk any duplicates of the receipts made and delivered to the taxpayers. This stipulation seems to modify the averments of the complaint to the extent that *MacAllister* did keep a duplicate receipt not countersigned by the county clerk nor filed in the office of the latter, but on file in the county treasurer's office, and that this duplicate receipt showed in each case the tax collector's fees, interest, and advertising fee, and it further seems to add to the complaint what is equivalent to an averment that *MacAllister* did enter on the delinquent tax roll opposite the property taxed, or in case of personal property opposite the name of the person taxed, the fact, date, and amount of payment.

For convenience of reference these cases will be numbered 1, 2, and 3. No. 1 covers the county treasurer's term ending on the first Monday of January, 1891; No. 2 covers the county treasurer's term ending on the first Monday of January, 1897; and No. 3 such term ending on the first Monday in January, 1899.

When the cause of action accrued in No. 1 on the first Monday of January, 1891, the period of limitation was by sec. 4220, R. S. 1878, twenty years. Ch. 268, Laws of 1893, introduced a new limitation applicable to a particular condition after the cause of action had accrued in No. 1. It contained no repealing clause nor anything inconsistent with the continuation in force of sec. 4220, except as to the special case covered by the ninety-day clause hereinafter referred to. By sec. 4976, R. S. 1878, Stats. 1898, and Stats. 1911, this statute of limitation in force when the cause of action accrued must be held "operative to determine all such limitations and periods of time which shall have previously begun to run." It does not appear upon the face of the complaint that this action was commenced after the first Monday of January, 1911, hence if the case is covered by

the twenty-years limitation in force when the cause of action accrued at the close of the county treasurer's term, the right of action is not barred unless barred by said ninety-day clause.  From the enactment of ch. 268, Laws of 1893, to the revision of 1898 there was no change in the statutes of limitation in question.  During the period last mentioned, but only as to causes of action accruing during that period, there were (omitting the ninety-day provision) two statutes of limitation in force affecting actions on official bonds under seal, viz.: sec. 4220, which provided a period of twenty years from the time the cause of action accrued, and ch. 268, Laws of 1893, which provided a period of three years after the municipality had received both notice and knowledge of the fact that there was a default in the conditions of the bond and that it was entitled by law to recover.  In cases in which the municipality had had at the time of the passage and publication of this act of 1893 such notice and knowledge for three years, there were ninety days allowed within which to bring an action.  Such notice and knowledge would, as to causes of action accruing during the period between 1893 and 1898, shorten the limitation of twenty years to three years in case of notice and knowledge, and in the particular case mentioned to ninety days.  The revision of 1898 brought about a change in ch. 268, Laws of 1893, which became sec. 984 of that revision, by dropping out the words "notice and" and by omitting the provision relating to suits within ninety days, and otherwise, so that the statute thereafter and now reads: "within three years from the time such county . . . received knowledge of the fact that there was a default in some of the conditions of such bond and that it was damaged because thereof."  In the same revision sec. 4220 was changed so as to expressly except from it those sealed instruments mentioned in said sec. 984 of the same revision.  During all this time sec. 4976, Stats., was and it still is in force and effect.  By force of the last men-

tioned section the statute of limitations which had begun to run on the cause of action pleaded in No. 1 continued to run and to govern the time within which such action must be brought, because no statute otherwise expressly provided except in those special cases in which the municipality had had for three years both notice and knowledge of the fact that there was a default in the conditions of the bond and that it was entitled by law to recover thereunder. It is significant that in order to have this effect there must be both notice and knowledge not only of the facts but also of the legal rights of the municipality. If it does not appear upon the face of the complaint that the municipality had such notice and knowledge for three years prior to the enactment of said ch. 268, the limitation provided by sec. 4220, *supra,* was continued in force by sec. 4976, and the judgment in No. 1 must be reversed.

## No. 2.

In No. 2 the cause of action accrued prior to the revision of 1898 but after the enactment of said ch. 268. It therefore falls within the purview of sec. 4976, Stats., and is affected by two limitations, viz.: three years if there was notice and knowledge, twenty years if there was not. Hence the judgment in No. 2 must also be reversed unless the county had notice and knowledge as stated in the statute, or unless the case can be distinguished and brought under the six-years statute of limitations by reason of the fact that no scroll or other representation of a seal appears opposite the names of the signers or in any place upon said instrument. The statute, however, required a bond. The instrument is in the form of a bond, contains a penal clause with a defeasance, and also the following: "Sealed with our seals and dated this 27th day of November, A. D. 1894." Under such circumstances this must be considered a sealed instrument. The mere omission of a scroll or flourish after the

names of the signers would be quite a flimsy ground of distinction and cannot outweigh the consideration that the statute required a bond which imports a sealed instrument, that the instrument is in the form of a bond, and that it is expressly stated to be sealed with the seals of the signers.

### Nos. 1, 2, and 3.

The cause of action in No. 3 accrued after the revision of 1898 went into effect and after causes of action on the official bonds mentioned in sec. 984, Stats. 1898, were expressly excepted from the provisions of sec. 4220, Id., therefore is governed solely by sec. 984, Id. But this statute as it appeared in said ch. 268 also affected No. 1 if at the time of its enactment the county had had for three years such notice and knowledge, and No. 2 if after the passage of the said act of 1893 and before the commencement of this action the county had for three years or more such notice and knowledge.

Appellant's counsel have cited us to judicial definitions of the word "knowledge" as distinguished from notice in a contract of suretyship. *First Nat. Bank v. U. S. F. & G. Co.* 150 Wis. 601, 609, 137 N. W. 742. In a statute relating to supplemental pleadings. *Peoples v. Carrol,* 11 Heisk. (58 Tenn.) 417. In a contract of suretyship. *Fidelity & C. Co. v. Gate City Nat. Bank,* 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 821. Under a statute making criminal all receipt of deposits with knowledge that the bank is unsafe or insolvent. *Utley v. Hill,* 155 Mo. 232, 55 S. W. 1091. In a statute relating to duties of prosecuting attorney. *State v. Ransberger,* 106 Mo. 135, 17 S. W. 290. Distinction between knowledge and actual knowledge. *Kirkham v. Moore,* 30 Ind. App. 549, 65 N. E. 1042. Between knowledge and belief. *Ohio Valley C. Co. v. Goble,* 28 Ind. App. 362, 62 N. E. 1025. Between the words "knowledge" and "notice." *Clarke v. Ingram,* 107 Ga. 565, 33 S. E. 802;

*Levins v. W. O. Peeples G. Co.* (Tenn. Ch. App.) 38 S. W. 733.

These cases are of little aid in construction. We may look at ch. 268, *supra,* to aid us in determining the proper construction of sec. 984, *supra,* for it may be presumed that no very radical change was intended by the revision. Knowledge of a fact or condition and "knowledge of the fact that there was a default in some of the conditions of such bond and that it was damaged because thereof" can easily be differentiated. Knowledge of a sentient person is quite different from knowledge of a municipal corporation. The subject of the legislation, the context, the associated words, and the mischiefs which the particular statute was intended to guard against, as well as the consequences of a particular interpretation, all factors in arriving at correct results, make mere judicial definitions of particular words used in a different connection and with reference to a different subject quite subordinate aids, if any aid, in interpretation.

The respondents cite *Black v. Black,* 64 Kan. 689, 68 Pac. 662, 667; *Lewis v. Duncan,* 66 Kan. 306, 71 Pac. 577; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360; *Board of Comm'rs v. Renshaw,* 23 Okla. 56, 99 Pac. 638; *Lataillade v. Orena,* 91 Cal. 565, 27 Pac. 924; *Wood v. Carpenter,* 101 U. S. 135; *Laird v. Kilbourne,* 70 Iowa, 83, 30 N. W. 9; *Shelby Co. v. Bragg,* 135 Mo. 291, 36 S. W. 600; *State v. Yates,* 231 Mo. 276, 132 S. W. 672; *Mecosta Co. v. Vincent,* 65 Mich. 503, 33 N. W. 44. These cases relate to the discovery of fraud under statutes of limitation which provide that the statute shall begin to run at the time of the discovery of the fraud, or which relate to the concealment of the cause of action and provide that the statute shall begin to run from the time of its discovery or the discovery of the facts constituting the fraud or the concealment. They throw little light upon the question of construction here involved,

on account of the difference in expression and difference in
the subject legislated upon.    They are somewhat analogous,
but the analogy is far from perfect.    Generally speaking,
they are in line with *O'Dell v. Burnham,* 61 Wis. 562, 21
N. W. 635, where, however, it was said, quoting *McMahon
v. McGraw,* 26 Wis. 614, 622: "The discovery by the ag-
grieved party of the facts constituting the fraud is an actual
discovery, and not a mere constructive discovery."    In
*Ludington v. Patton,* 111 Wis. 208 (86 N. W. 571), it was
said at page 242: "It must be conceded that the statute of
limitations commenced to run against the appellant from
the time she obtained knowledge of the fraud or might have
obtained such knowledge by the exercise of reasonable dili-
gence."

In *State v. C. & N. W. R. Co.* 132 Wis. 345 (112 N. W.
515), at page 360, this question is considered with reference
to an alleged concealment of a cause of action where no stat-
ute provided that such concealment should extend the period
of limitation.    This is a situation quite different from that
in the case at bar.    There was there no such statute, no false
entries, no contrivance upon the part of the defendant to
mislead the plaintiff, and nothing to show but that the plaint-
iff had full opportunity to make an investigation of the busi-
ness so as to ascertain whether the reports of the defendant
were correct.    It has very little bearing upon the question
of construction of a statute like that before us.

What follows is relevant to all the cases Nos. 1, 2, and 3.
The learned circuit judge stated the question to be, "whether
the county is chargeable with knowledge of all that the rec-
ords showed relative to errors in the treasurer's account sub-
mitted for audit by the county board at the close of his term,
although they did not, as a matter of fact, make such exami-
nation of books and. vouchers in their possession as to dis-
cover existing errors, it not being claimed that actual knowl-

edge of a defalcation existed 'until discovery." He then proceeded as follows:

"So far as the question is concerned, I do not think that it makes any difference how easy or difficult it may be to ascertain the facts from the books or documents which it is the duty of the board to examine in .auditing the treasurer's account. . . . If the county officers, and through them the county, are chargeable with knowledge of anything that an inspection of the books and records would disclose, they are chargeable with everything that such inspection would disclose."

We cannot approve of this view of the statute. According to this it would require less to charge one with knowledge than it does to charge one with notice, for the officers would under common law be only chargeable with notice of what an ordinarily diligent investigation would disclose. Knowledge is more than notice. It may or may not flow from notice, depending sometimes upon the kind of notice, whether actual or constructive, the extent of notice, the relationship of the parties, and the degree of knowledge required by the statute. This construction would in practical effect make the statute operate as a simple three-years limitation, because in all cases such knowledge could be acquired by an expert accountant except where the records and memoranda were out of existence. We are not certain in this connection what the learned circuit court meant by "books and documents." If he referred to the duplicate receipts, not countersigned as required by law and not filed with the county clerk as required by law but left in the office of the county treasurer, these were not official documents or records and there was no duty to look for them among the files of the county treasurer's office, where they had no legal right to be. If he referred to the return of delinquent taxes required by sec. 1113, Stats., that was a record required by law to be kept, and if duly verified (sec. 1114) was evidence of the amount of taxes re-

turned delinquent, but we have been referred to no statute and have found none making it the duty of the county treasurer to indorse payments of delinquent taxes upon this delinquent return. On the contrary, the statute makes it the duty of the county treasurer, at the time the return of delinquent taxes is made to him, to deliver to the officer making such return a certificate of the amount of delinquent taxes so returned, which shall be delivered to the county clerk, who shall file the same in his office. The county treasurer is forbidden to satisfy the bond of the town, village, or city treasurer until this certificate is delivered to the county clerk and filed in the office of the latter. The county treasurer, therefore, must see that this is done. The purpose of filing this certificate with the county clerk is to have a check upon the county treasurer and so as to charge the latter with the whole amount of taxes returned delinquent, and it forms the proper record to be referred to in settlement with the county treasurer. When any tax on lands returned delinquent is paid to the county treasurer before sale, with interest and charges, the treasurer is required to execute duplicate receipts therefor, each countersigned by the county clerk, showing the name of the person paying the same, the date, amount, and description of land, etc., and one of these shall be delivered to the taxpayer and the other filed by the county clerk. Sec. 1129. We may presume that the county board had knowledge of the failure to have countersigned and to file these duplicate receipts with the county clerk, but the statute requires more than this. There must also have been knowledge that the county was damaged by such failure. This is also a check upon the county treasurer, and these two are the legal vouchers or records for settlement with the county treasurer, and not the entries or memorandum of the county treasurer on the delinquent tax return kept in his office. The law does not require such entries, but a different record in another office and in a different form. See, also,

sec. 1141. These requirements tend to show that the county clerk's office must contain all data necessary for a settlement and accounting with the county treasurer. What would be the result had the county board or its committee actually seen the delinquent tax return with this memorandum indorsed thereon we need not speculate. It is sufficient that they were not required to look in such a place for data which the law provided should be kept elsewhere and in a different and more authentic form, verified by a different officer. These being the two facts added by stipulation, we think they did not overcome the positive averments of lack of knowledge found in the complaint, coupled with the charges of false entries, deception, and fraud practiced by the county treasurer. Of course this must be understood to mean, not that we find that false entries were made or that fraud existed. Indeed, there is some perceptible suggestion to the contrary, but it means that these matters are sufficiently alleged.

Under our liberal rules of pleading, lack of knowledge is sufficiently averred in the complaint, and hence it is admitted by demurrer except as to these two matters above mentioned. By these the averment of lack of knowledge is not avoided. Under such a complaint the plaintiff may prove a condition of absence of official or proper entries and presence of false and misleading entries sufficient to establish lack of knowledge on its part, and so surcharge and falsify any account heretofore stated between the county and its treasurer. This applies to amounts alleged to have been collected at the sale as well as to those collected before sale. In the interpretation of said ch. 268 and said sec. 984, we must bear in mind that they deal only with causes of action accruing to municipal corporations and only with notice to and with the knowledge of municipal corporations, and relate to actions against fiduciaries.

The knowledge of a municipal corporation is quite distinguishable from knowledge on the part of a natural person

or a business corporation. In the case of a natural person this is obvious. In the case of a business corporation the officers are the agents of the corporation, not only within their statutory and common-law duties, but as to all duties that may be imposed upon them by express command of the governing body of the corporation or by the usual course of business of the corporation. In a municipal corporation this is not true. The relation of the officer to such corporation is that created by statute only. Knowledge of a municipal corporation cannot be taken to mean knowledge of its inhabitants or constituent members. The entity itself cannot have knowledge in the same sense that a natural person may possess it. It can have knowledge only from its records authorized by law and through its officers upon whom the duty is cast by statute to know the contents of these records. A successful deception of these officers without negligence on their part would not constitute knowledge of the municipality. Neither is a municipal corporation chargeable with knowledge under the statute in question merely because the fact of default on the bond might have been discovered by expert examination. If such default would not have been discovered by an ordinarily careful examination such as would have been made and is usually made by laymen inexperienced in accounting who ordinarily constitute the county board, then the county cannot be as matter of law charged with knowledge of the default. If fraud and false entries are resorted to by the official for the purpose of concealing the default and this did successfully conceal the default from men of the description stated making such an examination, the county cannot be chargeable with knowledge. But if the officers charged with the duty of investigating might from the lawful records, by a cursory investigation, have discovered the default, or if the lawful records on their face plainly show the default, or if actual knowledge is brought home to

the officers of the municipality charged with the duty of examination and accounting, at the time of such examination and accounting, in all cases excluding the delinquent officer, the county would have knowledge.    It seems to us that under the averments of the complaint in this action this matter of knowledge as required by the statute is a question of fact to be litigated at the trial, and that possession of such knowledge by the county does not appear upon the face of the complaint either alone or aided by the stipulation referred to.

It follows that the judgments in Nos. 1, 2, and 3 must be reversed, and the causes remanded for further proceedings according to law.

*By the Court.*—It is so ordered.


A motion for a rehearing was denied, with $25 costs, on January 13, 1914.