ZDUNEK, Receiver, Respondent, vs. THOMAS, Appellant.

*March 7—April 3, 1934.*

For the appellant there was a brief by *Bundy, Beach & Holland,* and oral agrument by *John M. Campbell,* all of Eau Claire.

For the respondent there was a brief by *Farr & MacLeod* of Eau Claire, and oral argument by *Arthur W. MacLeod.*

ROSENBERRY, C. J. The only question raised here is whether or not there is sufficient proof to sustain the finding of the trial court that the defendant had notice of facts and circumstances amounting to knowledge on her part of the impending failure of the bank. Defendant's liability is predicated upon sec. 5151, R. S. of U. S., which appears as sec. 63 of title 12 of the U. S. Code, and sec. 64 of title 12, U. S. Code. Sec. 64 provides:

". . . The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; . . ."

It appears from the evidence that Mrs. Thomas, who lived in Minneapolis, was accustomed to visit in Fairchild, which had been her former home and was the place where her sister lived, three or four times a year. Although she had paid a previous assessment on account of impaired

capital, she claimed to have no knowledge of the condition of the bank on May 6, 1931, on which day she made the transfer to Mr. Calkins. Upon cross-examination Mr. Calkins testified:

"I recall being there at the time the stock was given to me. She asked me about the condition of the bank at that time. I told her there was no particular change, that we were getting along and that we could weather the storm, that general conditions were bad, that other banks were having trouble, but we thought we were going to be able to get through."

In directing judgment the trial court said:

"The directors knew the bank was hopelessly insolvent at the time and Mr. Calkins knew it. Every one connected with the bank who inquired of the condition of the bank knew it, and if Mrs. Thomas didn't inquire it was because she didn't want to know. She had been there and sold her stock. Now, the surrounding circumstances were so open and apparent and so clear that it seems to me it would be like trifling to say that a person did not or could not see, and if they didn't see it it was because they closed their eyes not to see. . . . And then the nature of the transaction itself, the fact that it was a gift, and that it was a gift to a person who was unable to pay and who was a relative. She could not make a gift of that kind to any one unless it was some one who wanted to befriend her. Taking the whole thing, I cannot see any escape from the conclusion that she was chargeable with knowledge. There is no fraud about it at all. She had a perfect right to transfer it and a perfect right to give it away, but she gave it away under circumstances that made herself liable."

The bank was taken over by the comptroller of the currency on August 18, 1931, so that the transfer was made more than sixty days prior to the failure of the bank, and the defendant is not liable unless at the time of the transfer she had "knowledge of such impending failure." We must therefore consider what is meant by the term "knowledge" as used in the statute. The term "knowledge" is used not

infrequently as the equivalent of information, intelligence, notice, although in some cases a distinction may be drawn. *Oconto County v. MacAllister,* 155 Wis. 286, 143 N. W. 702. See 20 R. C. L. p. 340, § 1, and cases cited. ·

It is a general rule of law sustained by the authority of many cases that whatever fairly puts a person on inquiry with respect to an existing fact is sufficient notice of that fact if the means of knowledge are at hand. If under such circumstances one omits to inquire, he is then chargeable with all the facts which, by proper inquiry, he might have ascertained. *Melms v. Pabst Brewing Co.* 93 Wis. 153, 165, 66 N. W. 518, 20 R. C. L. p. 346, § 7, and cases cited.

The matter of knowledge or means of knowledge is dealt with in the Restatement of the Law of Contracts, sec. 180, comment f:

"A person has 'reason to know' a fact when he has such information as would lead a person exercising reasonable care to acquire knowledge of the fact in question or to infer its existence."

If a person confronted with a state of facts closes his eyes in order that he may not see that which would be visible and therefore known to him if he looked, he is chargeable with "knowledge" of what he would have seen had he looked. A person by closing his eyes for the purpose of preventing knowledge by that act brings himself within the field of knowledge as that term is used in the law. Therefore the trial court correctly held that if the defendant desisted from inquiry for the reason that she suspected that a situation existed which she did not wish to be aware of, she brought herself within the field of knowledge as to those matters which a reasonably careful inquiry would have disclosed. The finding of the trial court is sustained by the evidence.

*By the Court.*—Judgment affirmed.