Sidney KOHL on behalf of The Southridge Company, a co-partnership, Plaintiff-Appellant and Cross-Respondent,

v.

F. J. A. CHRISTIANSEN ROOFING CO., a Wisconsin corporation; Wah Yee; Wah Yee Associates; W. R. Grace & Company, a foreign corporation, Defendants-Respondents and Cross-Respondents,

TAUBMAN COMPANY, INC., a foreign corporation, Defendant-Appellant and Cross-Appellant.

Sidney KOHL on behalf of The Southridge Company, a co-partnership, Plaintiff-Appellant and Cross-Respondent.†

v.

PY VAVRA ARCHITECTS-ENGINEERS, INC., a Wisconsin corporation, Defendant-Respondent and Cross-Respondent.†

Court of Appeals

*No. 79–090. Argued October 19, 1979.—Decided January 10, 1980.*
(Also reported in 289 N.W.2d 329.)

† Petition to review denied. DAY, J., took no part.

For the appellant, there were briefs submitted by *Friebert & Finerty* of Milwaukee and *Hoyt, Greene & Meissner, S.C.* of Milwaukee, with oral argument by *Robert H. Friebert.*

For the respondents, there was a brief filed by *Whyte & Hirschboeck, S.C.; Kluwin, Dunphy, Hankin & Mc-Nulty; Hayes & Hayes; Riordan, Crivello, Sullivan & Carlson,* all of Milwaukee, and *Niebler & Niebler* of Menomonee Falls, with oral argument by *John H. Niebler.*

Before Voss, P.J., Brown and Bode, JJ.

BROWN, J. This is an appeal from a summary judgment dismissing the owner's complaint against various defendants, all of whom were involved in the construction of Southridge Shopping Center. The owner is Sidney Kohl on behalf of The Southridge Company, a co-partnership. The defendants are the Taubman Company, Inc., the general contractor; F. J. A. Christiansen Roofing Co., the roofing subcontractor; Wah Yee, and Wah Yee Associates, the architects; Py-Vavra Architects-Engineers, Inc., the sub-architect, and W. R. Grace & Com-

pany and Certain-Teed Products Corporation, manufacturers of roofing materials. The only defendant not dismissed from the action was Taubman Company, Inc. The trial court ruled that Kohl had been alerted to the existence of injury more than six years prior to the commencement of the action and dismissed all claims on the basis that the applicable six-year statutes of limitations had run. We disagree.

On January 2, 1968, The Southridge Company, a co-partnership, whose members included Sidney Kohl, A. Alfred Taubman and Richard Paul Kughn hired the Taubman Company, Inc. to be the general contractor in the construction of a shopping mall. A. Alfred Taubman and Richard Paul Kughn, partners in The Southridge Company, were also officers, directors and shareholders of the general contractor, Taubman Company, Inc. Taubman Company, Inc. engaged the services of all defendants except the sub-architect (Py-Vavra) who was subcontracted by Wah Yee Associates, the primary architect.

Sometime in May or June of 1970, 12,000 square feet of the 300,000 square foot roof under construction experienced wind uplift damage but was immediately repaired. The roof was inspected on June 3 by Donald J. McNeil of Construction Consultants, Inc. because the wind uplift had occurred. On July 10, Construction Consultants, Inc. issued what we will refer to as the McNeil report. This report asserted that there were deficiencies still remaining in the roofing installation. No further repair was made at that time. About four years later, however, Southridge began to experience problems with the roof. In 1977, the entire roof was replaced.

Southridge Company commenced a civil action against all defendants except the sub-architect (Py-Vavra) on July 21, 1976. The pleadings indicated several alternative claims for relief against the various defendants sounding in fraud, misrepresentation, negligence, strict liability, breach of contract and breach of implied warranty.

The fraud action was based on an allegation that the defendants wrongfully concealed the defect from Kohl and Southridge and that the defendants misrepresented the roof to be in sound condition. The trial court, however, found that even if there was concealment, such concealment would have been exposed by the McNeil report. Since a plaintiff in a fraud action must begin his law suit within six years after discovery of the concealment, the trial court was inclined to dismiss the claim. Kohl, however, argued that it did not know about the McNeil report and thus could not have discovered the concealment by reading the report. The trial court dismissed the claim, finding that the report was given to Taubman Company, Inc. Since the report was given to Taubman Company, Inc., and since A. Alfred Taubman was an officer in the construction company that authorized the report, the trial court reasoned that the knowledge Taubman acquired from the report, Kohl must also have acquired. The trial court concluded that Taubman was the agent of Kohl and that Kohl necessarily had notice of the concealment of the wind uplift damage because he was Taubman's partner. The trial court thus granted summary judgment finding that discovery of the concealment took place on July 10, 1970 when the McNeil report was delivered to Taubman Company, Inc. and that the Kohl complaint was not filed until more than six years after the discovery.

The negligence action was also dismissed. The trial court noted that the wind uplift damage had occurred no later than July 10, 1970. Defendants argued that since the action was commenced on July 21, 1976, it was thereby barred by the six-year statute of limitations of sec. 893.19(5), Stats., because it was more than six years from the time of actual injury to the filing of the complaint. The trial court agreed that the six-year statute of

limitations began to run at the time of the wind uplift damage.

Although we do not have the benefit of the trial court's reasoning behind this finding, we assume the trial court felt the damage, by itself, was sufficiently significant to alert Southridge of the defect before July 10, 1970. The trial court also dismissed the strict liability action on the same ground.

An action for breach of contract against the architect, Wah Yee, was dismissed on the basis that the architect completed his contractual obligations more than six years prior to the commencement of the action. The trial court found that if Wah Yee did breach its contract, the breach had to have occurred at or prior to the sufficiently significant injury of July 10, 1970. The trial court also dismissed a separate implied warranty claim against the defendants Christiansen Roofing and Grace because the court found no privity of contract between Kohl and those two defendants.

In deciding that the trial court's use of various statutes of limitations incorrectly warranted summary judgment, we first note that summary judgment is not appropriate if there is a material issue of fact or if different inferences may be drawn from the facts. *Krezinski v. Hay*, 77 Wis.2d 569, 572, 253 N.W.2d 522, 524 (1977). If there is no genuine issue of material fact, summary judgment must be granted. Sec. 802.08(2), Stats. Our review on appeal from a grant of summary judgment is to independently make this determination. *Wright v. Hasley*, 86 Wis.2d 572, 578–79, 273 N.W.2d 319, 322–23 (1979).

Because of the number of defendants and the number of claims, we will discuss each claim separately. Further facts will be set forth as are necessary to the determination of each claim. The term "defendants" will refer to all defendants except Taubman Company, Inc. unless specifically noted otherwise.

## FRAUD CLAIM

The statute of limitations in a fraud action begins to run from the time the fraud is first discovered. Sec. 893.19(7), Stats. Kohl claims that the defendants knew the wind uplift damage was due to the roof not being built according to specifications or existing industry standards. Kohl accuses the defendants of concealing this knowledge. Kohl further claims that he did not know of this fraud until the roof began experiencing problems in 1973 resulting in the replacement of the roof in 1977.

Defendants claim that on the basis of the pleadings and affidavits before us, Kohl, as a matter of law, discovered the concealment when the McNeil report was issued on July 10, 1970, more than six years prior to the commencement of the action. Defendants submit two arguments in support of their claim. Defendants' first claim is that Taubman Company, Inc. was an agent of Southridge. Defendants premise their argument by pointing to three contracts which are part of the record. They are: (1) The Building Contract between Southridge and Taubman Company, Inc.; (2) The Architectural and Engineering Services Contract between Taubman Company, Inc. and Wah Yee, the architect, and (3) The Management Agreement between Taubman Company, Inc. and Southridge. In the second and third instances, Taubman Company, Inc. either signed or is identified as the agent for Southridge. They conclude that since Taubman Company, Inc. was an agent of Southridge, and since the McNeil report detailing the cause of the wind uplift damage was available to Taubman Company, Inc., the knowledge gained by Taubman Company, Inc. can be imputed to Southridge by reason of the agency relationship.

We do not agree with the defendants. The elements necessary to support a finding of agency were set forth in *Peabody Seating Company, Inc. v. Jim Cullen, Inc.*,

56 Wis.2d 119, 123, 201 N.W.2d 546, 549 (1972), as follows:

(1) "the express or implied manifestation of one party that the other party shall act for him;" (2) "who has retained the right to control the details of the work;" and (3) "whether the party agreeing to perform the service is engaged in a distinct occupation or business apart from that of the person who engages the services." [Footnote omitted.]

The most compelling factor in determining if a party is an agent or independent contractor is the determination of who has retained the right to control the details of the work. *Bond v. Harrel,* 13 Wis.2d 369, 374, 108 N.W.2d 552, 554–55 (1961).

The elements identified in *Peabody* are not in the record before us. The Building Contract does not identify Taubman Company, Inc. as agent for Southridge nor does it give to Southridge the right to control or manage the daily activities involved in the performance of the contract. The Management Agreement identifies Taubman Company, Inc. as agent once the shopping mall has been completed, but Taubman Company, Inc.'s capacity in this agreement is to run the shopping mall. The Management Agreement has nothing to do with the construction of the building. We do not know from the Management Agreement whether Taubman Company, Inc. was supposed to act as an agent for Southridge in relation to the construction project.

The Architectural and Engineering Services Contract is also insufficient to establish the agency. An agency relationship exists only when there has been a manifestation to establish that agency. *Strupp v. Farmers Mut. Automobile Ins. Co.,* 14 Wis.2d 158, 166–68, 109 N.W.2d 660, 665–66 (1961). Although it is true that A. Alfred Taubman did sign as the owner's agent, Kohl and Southridge dispute any manifestation of intent that Taubman Company, Inc. was to serve as their agent in this project.

We cannot say that a simple signature by Mr. Taubman indicating that he was the owner's agent is the only proof necessary to find an agreement to act as an agent and manifestation that one party act for the other. Certainly, the Architectural and Engineering Services Contract is evidence and support of agency, but there is still a material factual dispute as to whether an agency relationship actually existed.

Having concluded that the pleadings and affidavits on their face do not show that Taubman Company, Inc. was Kohl's agent, we next discuss defendants' second argument that A. Alfred Taubman and Richard Paul Kughn, as private individuals, acted as agents for Kohl and Southridge. This is an argument of identity of interests. Defendants point out that the Southridge Company has as its general partners Sidney Kohl, A. Alfred Taubman and Richard Paul Kughn. They then note that Taubman and Kughn are the principal stockholders, chief executive officers and directors of Taubman Company, Inc. Defendants argue that whatever knowledge a director or officer has or ought to have will be imputed to him as a private individual. They state that as private individuals both Taubman and Kughn are partners in The Southridge Company. Defendants then reason that since it can be presumed that the director or officer of a corporation has knowledge of the affairs of that corporation, that knowledge must, by necessity, be imputed to the directors as private individuals. Therefore, defendants say that the knowledge that Taubman Company, Inc. had in relation to the wind uplift damage by reason of the McNeil report must be imputed to the directors as private individuals. Since the information is imputed to the directors as private individuals, it follows that at least two of the partners of Southridge had knowledge of the reasons for the wind uplift damage. Defendants conclude that since every partner is an agent of the part-

nership for the purpose of its business pursuant to sec. 178.06(1), Stats., the partnership must be held to have had knowledge of the reasons for the wind uplift damage more than six years prior to the commencement of the complaint.

It is true that some jurisdictions have conclusively presumed the director or officer of a corporation to have knowledge of the affairs of that corporation. *McCarty v. Kepreta*, 24 N.D. 395, 139 N.W. 992, 997 (1913); *Merchants' & Manufacturers' Securities Co. v. Wright*, 59 S.W.2d 1097, 1098 (Tex. Civ. App. 1933). *See also* 19 C.J.S. Corporations §762 (1940); 3 W. Fletcher, Cyclopedia of the Law of Private Corporations §836 *(rev. perm. ed.* 1975). There is, however, strong support for the proposition that a director or officer is not responsible for knowledge of all the affairs of a corporation, and that it is proper to impute knowledge only when the facts are sufficient to justify the finding that a director had or should have had knowledge. *Noll v. Boyle*, 140 Kan. 252, 36 P.2d 330, 331–32 (1934); *Darling & Co. v. Petri*, 138 Kan. 666, 27 P.2d 255, 258 (1933); 3 W. Fletcher, Cyclopedia of the Law of Private Corporations §837 *(rev. perm. ed.* 1975). The better rule seems to be that knowledge acquired by the corporation should not be imputed to another officer or director as an individual unless there is first an examination of the duties of the directors or officers and the diligence displayed in performing their duties. *See generally* 3 W. Fletcher, Cyclopedia of the Law of Private Corporations §837 *(rev. perm. ed.* 1975). This examination would be required to determine whether the directors or officers were in a position to acquire the knowledge which could be imputed to them as private individuals and whether diligence in performing those duties would have provided disclosure. *See, e.g., Barrett v. Smith*, 185 Minn. 596, 242 N.W. 392

(1932) ; *Pacific National Agr. Credit Corp. v. Hagerman*, 39 N.M. 549, 51 P.2d 857 (1935) ; 3 W. Fletcher, Cyclopedia of the Law of Private Corporations §837 *(rev. perm. ed.* 1975). *See generally Harman v. Willbern*, 374 F. Supp. 1149 (D.C. Kan. 1974). We, therefore, conclude that whatever knowledge a director or officer has or ought to have will not necessarily be imputed to him as a private individual until after an examination of the duties of the directors or officers and after the fact finder has had an opportunity to determine whether diligence in performing those duties would have provided disclosure. Our holding is in line with *Attoe v. State Farm Mut. Automobile Ins. Co.*, 36 Wis.2d 539, 153 N.W.2d 575 (1967) ; *Uhrman v. Cutler-Hammer, Inc.*, 2 Wis.2d 71, 85 N.W.2d 772 (1957) ; *Zdunek v. Thomas*, 215 Wis. 11, 254 N.W. 382 (1934), which hold that whether an individual can be charged with constructive knowledge is generally a question of fact and that individuals cannot close their eyes to obvious facts.

Because an examination of the duties of directors or officers of Taubman Company, Inc. and their diligence in performing those duties is not part of this record, we reject defendants' argument and find the facts necessary to resolve the legal issues associated with the fraud claims can only be resolved at trial. Therefore, whether discovery of the fraudulent concealment occurred more than six years prior to the commencement of the action is a question for the trier of fact.

## NEGLIGENCE AND STRICT LIABILITY

Kohl claims he had no knowledge of the wind uplift damage of April or May, 1970. He further claims no knowledge of the McNeil report dated July 10, 1970. He says the wind uplift damage was not of sufficient magnitude to alert him that the injury had, in fact, occurred.

He asserts that whether the injury was of sufficient significance to alert him to the possibility of a defect is a question of fact for the jury to determine. He also argues that a negligence action does not accrue during the performance of a construction contract.

In *Tallmadge v. Skyline Construction, Inc.*, 86 Wis.2d 356, 359, 272 N.W.2d 404, 405 (Ct. App. 1978), this court stated:

[T]hat a cause of action accrues and the statute of limitations (sec. 893.19(5), Stats.) begins to run when the evidence of injury to property, resulting from the negligent act upon which the action is based, *is sufficiently significant to alert the injured party to the possibility of a defect.* The injury need not, however, be of such magnitude as to identify the causal factor.
Ordinarily, the question of when such a resulting injury occurred will be a question of fact for the jury. [Emphasis added.]

*Tallmadge* does not make it necessary for an owner to first have notice of the injury before the statute of limitations starts running. Instead, it is enough if the damage is sufficiently significant so as to alert him of the damage. Once there has been a sufficiently significant injury, the negligence action accrues even if the injury occurs during the performance of a construction project.

In this case, it appears that 12,000 square feet of the roof suffered injury. Since the roof has over 300,000 square feet, however, we cannot say that the injury itself is of such magnitude that, as a matter of law, Kohl was alerted to the fact of injury. This is so, even though there may have been complaints of rain leakage and even though Kohl visited the construction site on June 2, 1970. Kohl denies knowing about the wind uplift damage and also denies knowing that the rain leakage had any-

thing to do with the wind uplift damage. The facts are in dispute. We cannot say that the facts alone show a "sufficiently significant" injury to alert Kohl that the roof was defective as of July 10, 1970, thus starting the statute of limitations.

Defendants next assert that even if the wind uplift damage itself was not sufficiently significant to alert Kohl and Southridge to the possibility of a defect, the McNeil report did. Defendants claim the report spells out in detail the deficiencies, and any reader of the report would be adequately alerted to at least the possibility of the defect.

This again presupposes that Kohl and Southridge read the McNeil report so as to be alerted. We have previously opined that, upon the record before us, we cannot say that Kohl and Southridge read the McNeil report or knew of it. Nor can we impute knowledge of its contents to Kohl and Southridge by means of an agency relationship with either Taubman Company, Inc., A. Alfred Taubman or Richard Paul Kughn. The issue is for the fact finder.

## BREACH OF CONTRACT ACTION
## AGAINST THE ARCHITECT, WAH YEE

The breach of contract action against Wah Yee was dismissed by the trial court because it found that any breach in the supervision of the roof would have had to occur at or prior to the time of the wind uplift damage. Since the court found that the wind uplift damage was the sufficiently significant injury and that it occurred on July 10, 1970, the action was barred by the six-year statute of limitations. The trial court also determined that the date of the last physical construction was June 19, 1970. Apparently, the trial court found that Wah Yee had completed all contract obligations, except for the

issuance of a certificate of completion, before July 10, 1970.

The allegations contained in the breach of contract claim are based on provisions in the Architectural & Engineering Services Contract which provided that Wah Yee was to design and supervise the construction of Southridge. Clearly, some breaches of those obligations could have occurred before July 10, 1970, and as such would now be barred by the statutes of limitations. *See Milwaukee County v. Schmidt, Garden & Erickson*, 43 Wis.2d 445, 168 N.W.2d 559 (1969). Kohl contends, however, that the work logs for the construction project show that the work was still being performed on the roof in August and possibly September 1970. If this is the situation, the plaintiff can maintain a breach of contract claim for breaches occurring in that time period. *See Schmidt, Garden & Erickson, supra;* 4 A. Corbin, Contracts §§946, 948, 951 (1951 & Supp. 1971).

Since there is a dispute involving the dates of completion of Wah Yee's contractual obligation and a dispute as to when the sufficiently significant injury occurred, and since the breach of Wah Yee's obligations may have occurred within the six years of the commencement of this action, summary judgment was not proper.

## IMPLIED WARRANTIES

The trial court dismissed all implied warranty claims finding that since Taubman Company, Inc. was the party who contracted with the defendants, there was no privity between The Southridge Company and any of the assorted defendants. The determination of this claim depends on whether an agency relation exists. That is for the trier of fact.

CROSS CLAIMS OF TAUBMAN COMPANY, INC.

For the foregoing reasons the cross claims of Taubman Company, Inc. must also be reinstated.

*By the Court.*—Judgment reversed; cause remanded for further proceedings consistent with this opinion.