CITY OF MILWAUKEE, Respondent, vs. DREW, Administratrix, and others, Appellants.

*January 8—March 3, 1936.*

512

514.

For the appellant Alice L. Drew, administratrix, the cause was submitted on the brief of *Maurice A. McCabe* and *George A. Burns,* both of Milwaukee.

For the appellant I. J. Rosenberg the cause was submitted on the brief of *Ben J. Wiener* and *Louis S. Wiener.*

For the remaining appellants there were briefs by *Douglass Van Dyke,* attorney for the Fidelity & Deposit Company of Maryland, and *Lines, Spooner & Quarles,* attorneys for the United States Fidelity & Guaranty Company and the Standard Accident Insurance Company, and *Howard A. Hartman* and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott* and *Mr. Van Dyke.*

· For the respondent there was a brief by *Max Raskin,* city attorney, and *Wm. F. Quick,* first assistant city attorney, and oral argument by *Mr. Quick* and *Miss Mary C. Eschweiler* of Milwaukee.

WICKHEM, J.   The appeal is taken, (1) by the personal representative of the city treasurer, whose official acts are in question; (2) by the defendant Rosenberg, whose transactions with Drew are claimed to have resulted in a breach of duty by Drew; and (3) by the sureties who, during the several terms of Drew as city treasurer, were obligated upon his official bonds.

Since the parties to this appeal have divergent interests, and since the appeal presents quite complicated questions, some of which affect all of the appellants and some of which do not, it will be convenient first to consider whether the first and second paragraphs of the complaint state a cause of action, (1) as to Drew and Rosenberg, and (2) as to the various surety companies.

(1) *With respect to defendants Drew and Rosenberg.*

The first question is whether any cause of action is stated against either of these defendants in the first paragraph of the complaint. This paragraph alleges the illegal hypothecation of securities purchased under the authority of the resolution set forth in the complaint and the use in the private business of Drew and Rosenberg of the proceeds of this hypothecation. The acts of Drew and Rosenberg in this respect are alleged to have been illegal, and while this characterization, standing alone, amounts merely to a conclusion of the pleader, it is apparent from an examination of the resolution and from a consideration of facts that are either alleged or are within the scope of judicial notice that the acts charged are illegal. That an officer of the city intrusted with city funds may so employ them without sustaining a liability to the city for resulting profits is a doctrine that we repudiate without hesitation; that any person acting in concert with him, may, with impunity from civil liability, keep his share of the profits from such an unlawful enterprise we likewise deny.

In *State v. McFetridge*, 84 Wis. 473, 54 N. W. 1, 998, at page 506, this court said:

"For reasons hereinafter stated it is unnecessary to determine whether, if the treasurer illegally made such deposits, he fulfilled his obligations to the state when he paid over the funds thus deposited as required by law. It may be observed, however, that, whatever the rights of the sureties are in such case, to allow the treasurer to escape accounting to the state for gains accruing from his illegal use of the public funds looks very much like allowing a public officer to profit by his own wrong and breach of official duty. Courts should be slow to assert the right of a delinquent official to such gains, unless compelled to do so by plain rules of law. . . ."

While it is true that this statement was not necessary to the determination of the case in view of the court's previous holding that the state treasurer had made a valid investment, it is sound in legal and ethical principle and we do not hesitate to state it as a rule of law.

The second cause of action states the facts differently, in that the hypothecation of bonds and the use of the proceeds to engage in private business is not alleged, it merely being asserted that the funds of the city of Milwaukee were intrusted to Rosenberg, a broker; that investments were made in United States securities; that these were bought and sold and profits realized upon the transactions. While it is not specifically so alleged, it is fairly to be implied from the allegations that the profits resulted from an excess of the selling price over that at which the bonds were purchased. This paragraph repeats its characterization of the conduct as illegal, but if the allegations support the conclusion of illegality, it is only with respect to the procedure or manner of investment, and not with respect to the fact of investment. It plainly appears from the resolution that an investment in United States securities was authorized and the purchase and sale for the purposes, respectively, of employing surplus

funds and securing cash for the city's needs, are plainly within the authorization. Whether the manner of investing through Rosenberg as a broker constituted an improper execution of Drew's powers we find no occasion to determine. If it did, the irregular manner of carrying out the directions of the resolution would not make the investment illegal.

While the distinction between the first and second causes of action is material in connection with the liabilities of sureties, it does not in any manner affect the liability of Rosenberg or that of the personal representative of Drew. The only legal consequence of the difference pointed out is that in the case of the wholly illegal transactions, the profits do not attach as an accretion to the public funds in such a way as to make a failure to account for these profits a breach of the official bond, while in the case of the lawful investment a contrary conclusion is required by the doctrine of the *McFetridge Case, supra.*

It is, of course, unnecessary in consideration of questions raised by general demurrer to determine whether an action of conspiracy survives or whether the city may have an accounting against the personal representative of the deceased treasurer. It is true that the first cause of action appears to be stated in terms of a conspiracy between Drew and Rosenberg to consummate an illegal transaction, while the second is grounded upon a supposed right to have an accounting. In testing the sufficiency of a complaint on general demurrer, however, we are not concerned with the theory of the pleader, nor does the fact that the allegations fail to measure up to the theory evidently entertained authorize the conclusion that the demurrer should be sustained. The sole question is whether the complaint states a cause of action, and if one is disclosed by the allegations of the complaint, the demurrer must be overruled. We conclude that each paragraph contains allegations sufficient to disclose a right in the plaintiff

to recover from Rosenberg and from the estate of Drew the profits resulting from the transactions set forth.

(2) *With respect to defendant surety companies.*

It now becomes necessary to consider whether a cause of action is stated against the defendant surety companies or any of them. This involves several wholly separate and distinct considerations.

1. It is contended that while a cause of action against Drew may have been stated, no such breach of duty is disclosed as will render liable the sureties upon his official bonds. This contention is predicated upon the claimed unlawfulness of the investments charged and upon the distinction taken in the *McFetridge Case* between lawful investments and those wholly illegal. While it may be argued that in the *McFetridge Case* the court did not determine the validity of this distinction for the reason it actually found the investments there involved to have been lawful in character, we conclude, (1) that the court there determined the lawfulness of the investments involved out of recognition of the validity of this distinction; (2) that the distinction is a valid one. Where a municipal treasurer has unlawfully invested the public funds or securities in his hands for the purpose and with the result of making private profits, and where, before demand, he has restored these funds with interest, it cannot be urged that the profits illegally made attach as an accretion to the funds in such a manner as to make his failure to account for them a breach of his official bond. While by such a transaction he does sustain a liability to the municipality for these profits, the liability is based upon considerations of good morals and of public policy that are no different when applied to him than when applied to any other person who has converted public property to his use and profit. The considerations which give rise to a cause of action in this case against Drew in his lifetime are no different from those giving rise to an

identical cause of action against Rosenberg. Applied to the question under consideration, it is our conclusion that since the first paragraph charged a wholly illegal and unauthorized use of funds, the resulting profits do not attach as an accretion to the funds for which Drew was officially accountable. The failure to account is not a breach of the fidelity bond, hence no cause of action is stated in the first paragraph against any of the defendant surety companies. The conclusion is otherwise as to the second paragraph for reasons heretofore stated.

2. It is contended that since the complaint merely states that the transactions in question took place between 1919 and 1930; that since different sureties were on the bonds during different terms; and that since the liability of any particular surety is for defaults occurring during the term for which his bond was given, no cause of action is stated against any surety.

The answer to this contention requires us to deal only with such causes of action against Drew as constitute breaches of his official bonds, and which consequently involve the sureties in liability upon these bonds. In other words, only the cause or causes of action set forth against Drew in the second paragraph need be considered. It is certain to us that there is stated against Drew at least a cause of action for each term of office served, provided the activities charged resulted in profits during each of the terms. In view of our conclusion that the sureties are liable for such profits as resulted from the lawful investment of city funds upon the theory that these profits attached as an accretion to the funds invested, it follows that there was at the end of each term an obligation to turn these funds into the city treasury, and that a cause of action existed against the treasurer and his bondsmen at the end of each such term to recover these profits. The fact that the same person was re-elected and served several terms con-

secutively cannot affect this conclusion. The obligations of the treasurer are assumed a term at a time, and the execution of new surety bonds as well as the fact of re-election and qualification for the new term implies new and separate duties secured by new and separate collateral engagements by the sureties. In view of this conclusion, the question is whether the complaint charges defaults during any particular term. This must depend on whether the general allegation "that from a period beginning on or about the 15th day of March, 1919, and ending on the 31st day of December, 1930," Drew and Rosenberg engaged in the transactions charged, sufficiently alleged this fact to make the complaint invulnerable to a general demurrer. If it does, then the fact that several causes of action have been intermingled in a single paragraph without separate statement is, of course, immaterial. So likewise is the fact that due to indefiniteness the complaint might be open to a motion to make more definite and certain. While in this case various motions to make more definite and certain were made, and while the indefiniteness of the complaint in this very respect was one of the grounds of these motions, the orders entered in response to the motions are not reviewable under sec. 274.34, Stats., as intermediate orders, since the appeals here are not from a judgment.

It is our conclusion that the complaint sufficiently sets forth that the dealings of Drew and Rosenberg were continuous during the period alleged, and that they resulted in recoverable profits in each term. It is, of course, sufficiently clear that upon any theory a cause of action is stated against defendants United States Fidelity & Guaranty Company and Fidelity & Deposit Company of Maryland, since these companies were sureties on each of the three four-year terms. It is our conclusion that the second paragraph of the complaint states a cause of action against the defendant sureties.

The next question is applicable to all the defendants. It is contended that all causes of action for profits made by John I. Drew as city treasurer during the term ending in April, 1920, as well as those ending April, 1924, and April, 1928, and by Rosenberg during the same period, are barred by the statutes of limitation. Separate demurrers by each defendant to each paragraph of the complaint were duly interposed and the question properly raised.

It is necessary at the outset separately to consider, (1) all causes of action stated against Rosenberg, and those against Drew which do not constitute a breach of his official bond, and (2) causes of action set forth in the second paragraph of the complaint against Drew and his sureties based upon breaches of his official bonds.

With respect to (1), it is our conclusion that the causes of action are fundamentally actions at law for money had and received. They are such causes as would have been enforced at common law in an action of implied *assumpsit*. The foundation for the liability of defendants Drew and Rosenberg has been discussed. This liability is based upon a duty founded in equity and good conscience to pay over to the city profits made from the illegal manipulation of the city's funds. Whether the causes of action have any foundation in tort it is unnecessary to consider, in view of the fact that sec. 330.19 (3), (5), and (6), Stats., provide a six-year period of limitations both in the case of actions on implied contracts and actions to recover for injuries to or the detention of personal property. It is necessary only to consider two contentions made by plaintiff.

The first is that paragraph 1 of the complaint states a cause of action for conspiracy, and that the cause of action accrues for the purposes of limitations only when the conspiracy has ended. Plaintiff claims that the limitations commence with the end of Drew's last term. We deem the con-

tention to be without merit. In *Jones v. Monson,* 137 Wis. 478, 484, 119 N. W. 179, this court said:

"There is no such a thing as a civil action for conspiracy. There is an action for damages caused by actions pursuant to a formed conspiracy, but none for the conspiracy alone. . . . In a civil action for damages for an executed conspiracy, as is very familiar, the gist of the wrong is the damages. The combination may be of no consequence except as bearing upon rules of evidence."

Assuming that the gist of the cause of action stated in the first paragraph is damages caused by an executed conspiracy, we cannot assent to the conclusion that no cause of action accrued until the end of Drew's last term as city treasurer. Since the only damages to the city on this theory would be the profits withheld, and since, as we hold, the complaint sufficiently alleges that profits were withheld during each of Drew's terms, an action could have been maintained at any time upon discovery. Further than this, we think the complaint does not state a cause of action for damages caused by a conspiracy. The association between Drew and Rosenberg is stated merely as an inducement to the allegations that both participated in the illegal transaction and in its profits, and that both sustain a liability by reason of this fact.

The next contention is based on sec. 330.18 (4), Stats., which prescribes a ten-year period of limitations with respect to,—

"An action which, on and before the twenty-eighth day of February in the year one thousand eight hundred and fifty-seven, was cognizable by the court of chancery, when no other limitation is prescribed in this chapter."

Since plaintiff contends that the complaint states a cause of action in equity, sec. 330.18 (4), Stats., is made the basis of a contention that the ten-year statute is applicable. However, we have already indicated that the complaint alleges an

ordinary legal cause of action on implied contract, and whatever standing plaintiff has in equity is due to the inadequacy of the legal remedy. Hence, assuming that the complaint states a cause of action in equity, the action is not one that was ever solely cognizable by a court of chancery, but one in which a court of equity exercises a merely concurrent jurisdiction. The statutes of limitations applicable to legal causes of action apply. See *State v. Chicago & N. W. R. Co.* 132 Wis. 345, 112 N. W. 515.

It is our conclusion that the causes of action against Rosenberg and those against Drew which do not constitute breaches of his official bond are subject to the statutes of limitation applicable to actions upon implied contract. Since the period of limitations prescribed is six years, it follows that all causes of action for profits received by Rosenberg prior to April, 1928, are barred by the statute of limitations; that all causes of action stated in the first paragraph of the complaint against Drew are barred as of the same date. Since we hold that the causes of action against Drew stated in the second paragraph constitute breaches of his official bonds, it will not be necessary to determine the application of limitations to these, except in their relation to the bonds.

With respect to (2), both defendant Drew and defendant sureties contend that the six-year statute of limitation heretofore held applicable to all causes of action except those based on the official bonds must also be applied to these causes of action. Particular reliance is had on sec. 330.19 (3), Stats. This subsection provides a six-year period of limitations with respect to "an action upon any other contract, obligation or liability, express or implied, except those mentioned in secs. 330.16 and 330.18." Sec. 330.16, so far as it may have any bearing upon the question involved here, provides in sub. (2) for a limitation of twenty years upon "an action upon a sealed instrument when the cause of action

accrues within this state, except those mentioned in . . . secs. 330.19 and 330.20 (2)."

Sec. 330.20 (2) provides:

"Within three years. . . . An action by any county, town, village, city or school district to recover any sum of money by reason of the breach of an official bond; such period to commence running when such municipality receives knowledge of the fact that a default has occurred in some of the conditions of such bond and that it was damaged because thereof."

An understanding of defendants' contention requires a consideration of the statutory history of secs. 330.16 and 330.20 (2).

Prior to May 2, 1893, the twenty-year statute of limitations (sec. 4220, Stats. 1878) was the only one applicable to actions on official bonds, and did not contain the provision eliminating official bonds from the operation of the limitation. In the *McFetridge Case, supra,* this statute was applied to actions to recover interest on state funds retained by the state treasurer. Immediately following the *McFetridge Case,* ch. 268, Laws of 1893, was approved by the governor. This provided, in substance, that whenever there shall be due to any municipal corporation any sum of money upon any official bond, an action to recover the same must be commenced within three years from the time when such municipal corporation had or received notice and knowledge of the fact that there was a default in the conditions of such bond, and that it was entitled by law to recover thereunder. This section ultimately became sec. 330.20, with such changes as a comparison of the two sections will readily indicate. These amendments are immaterial here.

In the case of *Oconto County v. MacAllister,* 155 Wis. 286, 143 N. W. 702, it was held that ch. 268, Laws of 1893, providing for a three-year limitation from the time of notice

of the default, did not repeal or in any manner affect the operation of the twenty-year statute prescribed in sec. 4220, Stats. 1878, except that the period of limitations in cases of notice or knowledge is cut to three years from the date of such notice or knowledge. The court said, referring to a cause of action there involved:

"It therefore falls within the purview of sec. 4976, Stats., and is affected by two limitations, viz.: three years, if there was notice and knowledge, twenty years if there was not. . . ."

In other words, while the cause of action of the municipality would be limited three years after notice or knowledge of the default, it would be limited after twenty years irrespective of such notice or knowledge.

In 1898, actions by municipalities on official bonds were removed from operation of the twenty-year statute of limitations, and this exception is still contained in sec. 330.16. It is the contention of defendants that this amendment left two statutes of limitation applicable, the six-year statute applicable to tort and contract actions alike, and the three-year limitation statute prescribed by sec. 330.20. The basis of this argument is that the enactment in 1893 of sec. 330.20 not only did not repeal or nullify the operation of the twenty-year statute applicable to sealed instruments, but that it did not affect the six-year statute applicable to contract and tort actions generally; that since the twenty-year statute has been modified to exclude from its operation official bonds, that still leaves the six-year statute applicable.

It is sought further to support this contention by the fact that sec. 330.19 (3) provides a six-year limitation with reference to actions upon contract, express or implied, *except those mentioned in secs. 330.16 and 330.18*. Having expressly enumerated the sections excluded, it is contended upon familiar principles of construction that it was intended

to include all other actions on contract, express or implied, and notably those based on a breach of an official bond. While the argument is ingenious, we think it is not sound. Originally, the twenty-year statute was the only applicable limitation because official bonds were instruments under seal. When sec. 330.20 was enacted, that made two limitation statutes applicable to the official bonds—the twenty-year because the bond was under seal; the three-year because it was an official bond and expressly covered by sec. 330.20.

The exclusion in sec. 330.19 (3) is not of actions governed by a twenty-year period of limitation under sec. 330.16 but to actions mentioned in that section. One of these is an action upon a sealed instrument. The reason for the exclusion in sec. 330.19 (3) is that the six-year statute on contracts, express or implied, has never been applied to actions on a sealed instrument. It is not likely that the legislature intended by the repeal of the twenty-year statute of limitations to bring into force a limitation that had never theretofore had any application to sealed obligations.

This was the view of the court in the case of *Oconto County v. MacAllister, supra.* In commenting upon the third cause of action under consideration in that case, the court mentions that this cause of action accrued subsequently to the amendment of 1898 and was therefore subject only to the three-year statute of limitation. It is contended that this was *obiter* and erroneous, but we are satisfied that neither contention is sound. It is our conclusion that the limitation of three years after discovery prescribed by sec. 330.20 (2) is the only limitation applicable to actions upon official bonds. In view of this conclusion, it is considered that the separate demurrers of defendant Drew and the defendant sureties to the second paragraph upon the ground that it appears on the face of the paragraph that the actions were barred by operation of the statute of limitations were properly overruled.

The next question arises upon demurrers interposed by all defendants upon the ground that causes of action had been improperly united. The statute involved reads as follows:

"263.04 *Uniting causes of action.* The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both. But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

The contention is that separate legal causes of action arose in favor of the city of Milwaukee and against Drew during each term of Drew in which profits were made and retained by Drew; that since different sureties were upon the bond of Drew in different terms and since the sureties during one term are not affected by the other causes of action, that there is a misjoinder within the terms of the statute.

From what has heretofore been said, it is evident that several causes of action, primarily legal in character, have been stated and intermingled without separate statement in a single paragraph of the complaint. We use the phrase "primarily legal" in order to save a question which requires determination upon this branch of the case. It is contended by the city that a cause of action for equitable relief is sufficiently stated.

At the outset, it may be well to give some consideration to the case of *Oconto County v. Carey,* 183 Wis. 420, 198 N. W. 590. In that case the defendant was county treasurer of the plaintiff county during two separate but consecutive terms of office. A different surety company was upon his bond for each term. The allegation of the complaint was that between certain specified dates, the defendant treasurer converted and appropriated to his own use the sum of $2,334.98 of the county funds; that he failed to keep his accounts so plaintiff could ascertain the exact amount of the defalcation

occurring in either of his terms of office and kept his accounts in such a negligent manner as to make it impossible to determine the exact amount of his defalcations; it was impossible for plaintiff to determine in which term the default occurred or which of said bonds were breached by the shortage. There was a demurrer upon the ground of misjoinder. It was held that an equitable cause of action was stated. The court regarded as important the allegations that as a result of the manner of keeping the books, it is impossible to determine the exact amount of defalcation under each of his official bonds or to determine in which term the defalcation occurred or the amount of the defalcation in each term. This was sufficient in the view of the court to indicate that an accounting was necessary in order to fix the liability of the sureties. The court says that:

"The complaint sets forth the existence of a fiduciary and trust relation between the plaintiff and the principal defendant and the necessity of a discovery."

From this it was concluded that the surety companies were interested in the accounting and are proper parties to the action. Once this complaint is treated as sufficiently setting forth an equitable cause of action for an accounting, there is, of course, no misjoinder. Defendants urge that the case of *Oconto County v. Carey, supra,* is to be distinguished from the instant one because of the death of Drew, and the fact that defendant in this action is his personal representative. It is defendants' contention that there is no obligation to account on the part of defendant Drew as administratrix of the estate of her husband, John I. Drew; that she sustained no fiduciary or official relationship to the city of Milwaukee which calls for an accounting on her part, and that the same is applicable to Rosenberg. For the purposes of this opinion, this will be conceded. As stated in defend-

ants' brief, equitable accounting may be predicated upon a duty to render an account, in which case it is a purely equitable remedy in the nature of specific performance. It is also true, however, that what is termed, perhaps inaccurately, a bill of accounting, lies where there is a debt or other legal liability, but where by reason of a need for discovery and the intricacy of the fact situation involved, a jury would not be an appropriate tribunal to hear the cause, and the legal remedy is consequently inadequate. In such a situation, it is pointed out by Mr. Pomeroy in his work, 1 Equity Jurisprudence (4th ed.), page 219, that:

"The primary right, estate, title, or interest which is the foundation of the suit must be legal, or else the case would belong to the exclusive jurisdiction of equity; and the law must, through its judicial procedure, give *some* remedy of the same general nature as that given by equity; but this legal remedy is not, under the circumstances, full, adequate, and complete. The actual foundation of this *concurrent* branch of the equitable jurisdiction, the essential principle to which every instance of its exercise must finally be referred, is therefore the inadequacy, incompleteness, or insufficiency of the legal remedies which can be granted by courts of law to the litigant parties. . . ."

It is into this class that the complaint in this action falls. The case of *Oconto County v. Carey, supra,* likewise belongs in this class. In connection with this, the case of *State v. Chicago & N. W. R. Co.* 132 Wis. 345, 112 N. W. 515, is applicable. That was an action brought by the state of Wisconsin for an accounting and discovery of license fees due it from defendant railroad company. The allegation was that the defendant was a railroad company incorporated under the laws of Wisconsin, engaged continuously since its incorporation in the operation of various lines of railroad in this state; that it owns real and personal property of great value which is exempt by law from taxation; that defendant

was, however, required by law to pay four per cent of its gross earnings as a license fee in lieu of taxes; upon information and belief it was alleged that its gross earnings during the years in question exceeded a certain specified amount; that the license fee was payable one half at the time the license for each year was issued and one half on or before the 10th of August, in each year; it was alleged that the defendant had not made and returned to the state a true statement of its earnings and that such statements as were made were incomplete and inaccurate; that by reason of such false statements, defendant had defrauded the state out of large sums of money; that it had failed to keep its books of account within this state; that it refused to pay the amounts actually due the state; that the plaintiff was unable to state the true amount due from the defendant by reason of the fact that the records evidencing these facts were in the possession of the defendant without the state of Wisconsin; that to establish the true amount due would require examination and inspection of thousands of items extending over a period of twenty years. There was a demurrer on the grounds that several causes of action were improperly united. It was held that while the complaint must be treated as stating several underlying causes of action at law, it also stated a cause of action in equity for the reason that the accounts involved will be long and complicated, and that knowledge concerning the transactions is exclusively in the defendant's possession. While fraud was alleged in the complaint in this case, it was not made the basis for the ruling that an equitable cause of action for accounting is stated. We discover no reason either in principle or authority why an exercise of the concurrent jurisdiction of equity in aid of a legal cause of action because of the inadequacy of the legal remedy needs to be predicated upon a fiduciary relationship. See 2 Harvard Law Review, 267; 3 Harvard Law Review, 237.

Conceding that the duty to account did not survive Drew's death, it is beyond dispute that the legal causes of action survived as claims against his estate. The sole ground for coming into equity is the inadequacy of the legal remedy, and is as good a ground when urged against the personal representative as when urged against the person against whom the cause of action originally lay.

Whether in *Harrigan v. Gilchrist,* 121 Wis. 127, at page 340, 99 N. W. 909, the rule stating that the obligation to account survives is too broadly stated, or whether it was intended to apply only to situations such as are involved here, need not be determined, but it may be stated that the facts to which the statement is directed are similar to those under consideration here. We think that this case is governed by the doctrine of *Oconto County v. Carey* and *State v. Chicago & N. W. R. Co., supra,* and that a cause of action in equity is here stated, provided there is a sufficient allegation of the inadequacy of the legal remedy.

It is contended by defendants that the sole disclosure of the complaint is that a discovery is needed; that bills of discovery have been abolished and no longer exist as a sole ground for equitable intervention; that sec. 326.12, Stats., provides a sufficient method of ascertaining before pleading and before trial such facts as are essential to the prosecution of the action.

This contention presents some difficulties, but they are the same difficulties that were forcibly called to the attention of the court in the dissenting opinion by Mr. Justice ESCHWEILER in the case of *Oconto County v. Carey, supra.* If the need for discovery were the only factor in this case, defendants' contention would be difficult to meet. However, as pointed out in the case of *Oconto County v. Carey, supra,* it is plainly inferable from the complaint that an accounting is necessary in order to fix the liability of the sureties. While no surety has any obligation for defaults other than those occurring in

the term during which it was on the bond of the treasurer, it is clear enough that plaintiff and defendants are interested in an accurate determination as to amount of profits, if any, retained by each defendant as well as the terms at which they were realized. They are equally interested in avoiding the diverse and inconsistent findings that may be the result of separate trials. From the number of years over which these transactions are alleged to have extended, and the number of transactions evidently involved in the purchase and sale of $62,000,000 worth of government securities, we conclude that it sufficiently appears that the examination of these transactions presents a highly complicated fact problem, and this, in connection with the other considerations heretofore discussed, indicates the inadequacy of the legal remedy.

We now come to the contention of the defendant Drew that the circuit court is without jurisdiction to hear this suit for the reason that the county court is the proper forum to determine claims against the estate of a deceased person. Implicit in this contention is the further claim that the county court affords a remedy as adequate, complete, and efficient as that available in the circuit court, and that in such a situation the circuit court should not assume jurisdiction. It is asserted that the filing of a claim in county court would sufficiently meet the requirements of this rule. This contention is based upon the case of *Cawker v. Dreutzer,* 197 Wis. 98, 221 N. W. 401. In that case it is said:

"We therefore hold that, unless it is made to appear that the county court before which an estate is being administered cannot afford as adequate, complete, and efficient a remedy as the circuit court, the circuit court should not assume jurisdiction, and to do so will be treated as reversible error. Anything to the contrary in former opinions must be considered as overruled."

See also *Connell v. Connell,* 203 Wis. 545, 234 N. W. 894; *Banking Comm. v. Muzik,* 216 Wis. 596, 257 N. W. 174.

In our opinion there is no merit to this contention. This is not merely a claim against the estate of Drew, but one against Rosenberg and the sureties upon Drew's bond as city treasurer. It is apparent to us that whatever the jurisdiction of the county court in administering a claim against Drew, it is not in a position to afford as adequate, complete, and efficient a remedy as the circuit court.

The foregoing results in the following conclusions:

*Upon the appeal of defendant Rosenberg.*

The trial court properly overruled the demurrer so far as based, (1) upon misjoinder of causes of action, and (2) failure of paragraphs 1 and 2 to state facts sufficient to constitute a cause of action. The court erred in overruling the demurrer so far as it was based on the statute of limitations.

*With respect to defendant Drew.*

The court properly overruled the demurrer so far as based, (1) upon lack of jurisdiction of the person of defendant Drew or the subject of the action; (2) failure of paragraphs 1 and 2 to state causes of action; and (3) misjoinder of causes of action. The court erred in overruling the demurrer to paragraph 1 so far as it was based upon the statute of limitations.

*With respect to defendant sureties.*

The court erred in overruling the demurrer to the first paragraph based upon failure to state facts sufficient to constitute a cause of action. In all other respects, the demurrer was properly overruled.

*By the Court.*—Order affirmed in part and reversed in part. Cause remanded for further proceedings in accordance with this opinion. No costs to be taxed upon these appeals. Appellants to pay the clerk's fees.