CAVENEY, Respondent, vs. CAVENEY, Administrator, Appellant.

*April 12—May 7, 1940.*

For the appellant there were briefs by *Pommerening & Wanecek,* attorneys, and *Walter A. John* of counsel, all of Milwaukee, and oral argument by *Mr. E. C. Pommerening* and *Mr. John.*

For the respondent there were briefs by *Herbert C. Hirschboeck,* attorney, and *Rowan & Kalaher* of counsel, and oral argument by *Mr. Hirschboeck* and *Mr. R. W. McKinnon,* all of Milwaukee.

FOWLER, J. As appears from the foregoing statement of facts the case is for an accounting to the plaintiff as the surviving partner of James Caveney, deceased, by the administrator of the estate of James.

The books of the partnership, as kept under the direction of James, show the interest of James in the partnership to be an equity in the partnership at the date of his death of $8,953.49, plus a $16,000 note of the partnership to him, as against an equity of $6,756.08 in the surviving partner. The account as stated by the court gives the investment of James, on September 30, 1938, the date of the death of James, as $3,021.89 less than he had received from the business; the investment of the plaintiff as $34,731.36, thus making the investment of the plaintiff $37,753.25 in excess of the investment of James. In the accounting interest at six per cent was allowed on the amounts of each partner's investment. The interest thus allowed to the plaintiff is $8,777.90 in excess of that allowed to James. The amount of this interest was due to the plaintiff from the partnership in addition to the amount above stated as coming to her from her investment, thus making $43,509.26 as the amount coming to plaintiff from the partnership property before anything can go to the estate of James.

It is not claimed that the books of the partnership do not correctly disclose the transactions involved. Nor does it appear that the account as stated by the court is not correct if the theory on which it is made is correct. The differences in the accounts result from the legal consequences of the transactions disclosed by the partnership books and the other evidence adduced.

The parties agree that the differences between the accounts are covered by three items: (1) The salary received by James in addition to the $1,400 a year allowed him by the partnership agreement; (2) sand and gravel sold by James to the partnership from pits purchased by him in his own name, the net avails of which the judgment of the court declares belong to the partnership; and (3) interest on the notes of the partnership paid to James. These several items involve, (1) overdrafts of salary by James aggregating $23,835.28; (2) payments to James for sand and gravel resulting in a net credit to the partnership of $18,454.35.; (3) and interest paid to James aggregating $13,661. These items will be separately discussed.

(1) The appellant claims that the several statements submitted to the plaintiff showing the aggregate of the office pay roll apprised her that James was taking more than $1,400 per year as salary, and that as she made no objection to his taking the excess she must be held to have assented thereto. The plaintiff denies that she knew that James was taking more than $1,400. It appears that as far back as 1925 the annual statements disclosed an office pay roll of nearly $4,700, and that later ones showed one as high as $6,800. The office force consisted of only the bookkeeper and James, and at times one other person at most, but the plaintiff claims that she supposed it contained the employees at the coalyard office also. The books of the partnership showed just what James was drawing from the business, but the plaintiff never saw the books. Two facts in evidence show an intent and an attempt by James to conceal from the plaintiff the amount of salary he was taking. In the annual account for 1932 James directed the bookkeeper to put $1,000 of the office payroll account into the labor account for the express purpose of avoiding the plaintiff's "suspecting" him of taking an excessive amount as salary. He was in fact taking $3,600 as salary at the time. Also about 1933 or 1934 when the plaintiff asked James at the partnership office to explain why her

interest in the business as shown by his annual account was so much less than his he merely said—"Well, that is just one of those things," and walked out of the office. On another occasion when the plaintiff at the office asked for information James made no answer and again walked out on the plaintiff. The annual accounts submitted by James showed only the totals of the office pay-roll account. They did not show the amount of the withdrawals by James. The court found in effect that incorporating the withdrawals of James in the aggregate of the office pay-roll account in the annual statements instead of showing them separately in a salary account was for the fraudulent purpose of deceiving the plaintiff as to the amount of his salary withdrawals, and a breach of the partnership agreement requiring him to submit "true and correct" statements of the receipts, expenditures, profits, losses, and condition of the firm. Under all the evidentiary facts involved we consider that the trial judge was justified in so finding and in finding that the plaintiff did not know of the salary withdrawals of James in excess of the amount expressly provided in the partnership agreement. In support of the ruling that James was not entitled to salary beyond that stipulated in the partnership agreement it is sufficient to cite *Estate of Week,* 204 Wis. 178, 235 N. W. 448, and sec. 123.15, Stats. The latter provides in part:

"*Rights and duties of partners.* The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules: . . .

"(6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

(2) The partnership from its inception was producing from its own pits the sand and gravel sold in its business. In 1915 James bought for about $500 eight lots adjoining a partnership pit and took the title in his own name. In 1921 and 1922 he purchased for $2,000 eighteen lots of gravel

bank, taking the title in the name of himself and his wife, using $1,825 of partnership funds toward the purchase. He returned $1,500 of the firm funds a few days after using them and charged his account therewith. In 1924 he purchased two other lots containing sand and gravel for about $500. The court found these purchases were made when the firm had ample funds with which to pay for them and that the purpose in not buying the properties for the firm was not to avoid speculative investments. The stripping of the purchases, except one, was done with partnership teams and workmen at partnership expense. Sand and gravel from these pits was used and sold in the partnership business, as well as that from the pits held in the partnership name, and James was paid the wholesale market price therefor, to an aggregate of $23,145.44. The plaintiff was found by the court not to have known of these purchases by James or of his gravel sales to the partnership. One of the pits was later sold by James. The court held that the sand and gravel transactions of James with the partnership and his taking of the title to the properties in his own name were in violation of his partnership obligations; that he held the property in trust for the partnership; that the net avails of the pits belonged to the partnership; and that the net avails received by James must be restored to the partnership. In arriving at the net avails James was given credit for the cost of the properties, the taxes paid thereon, and the cost which he paid of hiring the stripping of one of the properties to be done by power machinery; was charged with the sale price of the property sold by him, and the amount taken by him for the sand and gravel from the pits. No error in the amounts of the several items of credit and charge is disclosed.

We consider that the rulings of the trial court in respect of the sand and gravel transactions were correct. Sec. 123.18 (1), Stats., reads:

"Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him

without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

Restatement, Restitution, § 190, reads:

"Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as fiduciary, he holds it upon a constructive trust for the other."

Restatement, Restitution, § 193, reads:

"Where a fiduciary who has power to purchase property for the beneficiary purchases property from himself individually in violation of his duty to the beneficiary, he holds the purchase money upon a constructive trust for the beneficiary."

See also Restatement, Agency, §§ 387–389; Restatement, Trusts, § 170; *Grant v. Hardy,* 33 Wis. 668; *Pittsburg Mining Co. v. Spooner,* 74 Wis. 307, 42 N. W. 259. A partner is both a trustee and an agent. Secs. 123.18 (1), 123.06, Stats.

(3) While the plaintiff took checks from the firm to the amount of the profits shown by the annual accounts submitted to her by James, less the amounts drawn or received by her from the business during the preceding year, James drew nothing specifically designated as profits. He left all such stated profits in the business and drew partnership notes to himself for the amounts bearing interest at six per cent and paid to himself from the partnership funds the total amount of such interest in the sum of $13,661. The account as stated by the court charges him with this amount, and the judgment appealed from cancels the $16,000 note representing the aggregate of the so-called profits left by him in the business. The account stated by the court covers the matter of interest between the parties by crediting each with interest at six per cent on the amount by which his or her investment, the amount which each had in the business after deducting the amounts properly withdrawn, exceeded that of the other,

and charging him or her with interest at such rate on the excess of his or her such amount over such amount of the other. The parties were equal partners. Sec. 123.15, Stats., provides, in part:

"(3) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance.

"(4) A partner shall receive interest on the capital contributed by him only from the date when repayment should be made."

This statute, taking it as it reads, supports the ruling of the court. In *Gilman v. Vaughan,* 44 Wis. 646, 649, it is stated:

"As a general rule, interest is not allowed upon partnership accounts until after a balance is struck on a settlement between the partners, unless the parties have otherwise agreed or acted in their partnership concerns."

In the instant case James "otherwise . . . acted" in the partnership concerns by taking interest on the notes above referred to. In *Carroll v. Little,* 73 Wis. 52, 40 N. W. 582, it is stated that the allowing of interest in stating partnership accounts depends upon the circumstances of the case. The uniform partnership statute was enacted by our legislature in 1915, long subsequent to these decisions. If they seem at variance with the statute, the express and clear language of the statute is considered as changing their rulings so far as they are inconsistent with the statute.

(4) It is contended by appellant that the statements sent to the plaintiff annually setting forth her withdrawals and merchandise furnished her during the preceding year constituted accounts stated. They do not purport to be anything more than the personal account of the plaintiff showing her withdrawals and charges for fuel delivered to her. It is also contended that the annual reports heretofore referred to are

accounts stated, and as such not subject to impeachment or correction. Referring to these reports the trial court expressly found as fact:

"31. None of the reports, copies of which were submitted to plaintiff, stated any items or balances to which she and James Caveney were debtor or creditor to each other and none of the reports revealed any purpose at any time to bring about agreement as to any items or balances appearing therein, but all of the reports exhibited the interests of the partners as continuing investments in the going business."

Referring to them the court concluded:

"1. The statements and reports which James Caveney caused to be submitted to plaintiff from time to time during the partnership, and the payments which he caused to be made to her, and her retention of such statements, reports and payments without independent inquiry or objection, did not constitute stated or settled accounts between the partners."

The finding of fact is according to the evidence, and conclusion of law upon that fact is correct. The principle of accounts stated is based upon the relation of creditor and debtor rather than the partnership relation. Even under the simple relation of creditor and debtor an account stated involves an assent in good faith by the parties as an accurate computation of an amount due and may be impeached for fraud, and is open to a broader ground of attack than is the case of most contracts. 2 Restatement, Contracts, § 422, (1), (3), comment *f; Wussow v. Badger State Bank,* 204 Wis. 467, 476, 234 N. W. 720, 236 N. W. 687. It involves "the element of mutual meeting of the minds and of intention to contract." *Wojahn v. National Union Bank,* 144 Wis. 646, 667, 129 N. W. 1068. The element of assent by the plaintiff is here lacking. It is true that retention without objection is a manifestation of assent, but it is not conclusively so, at least as between partners. See Parsons, Part-

nership (3d ed.), p. 556 *et seq.* That the plaintiff did not assent is affirmatively shown by her rebuffed efforts to procure explanations requested from James. The wrongful basis on which James submitted the statements—that he was entitled to increase of salary and interest—opens the reports to attack for mistake, and the intentional concealment of excessive withdrawals as salary as found by the court opens them to impeachment for fraud. We consider that the conclusion of the court that the reports and statements of plaintiff's personal account cannot be given effect as accounts stated is correct.

The appellant also claims that the plaintiff is estopped from now objecting to the annual statements and the statement drawn from the books at the time of James' death. An estoppel is not created unless the party against whom it is urged had full knowledge of the facts, or unless the act of such party, here that of the plaintiff by acquiescing in the charges of James, induced the party claiming the estoppel to take action to his prejudice in reliance thereon. Here the plaintiff did not know the facts, and such acquiescence as there was on her part did not influence the conduct of James or operate to his prejudice. James knew all the facts. Knowing them, he cannot claim that he relied on plaintiff's acquiescence. *Gove v. White,* 20 Wis. *425; *Mortgage Discount Co. v. Praefke,* 213 Wis. 97, 250 N. W. 846.

(5) The appellant contends that no action for accounting lies against the administrator of a deceased person, and cites *Milwaukee v. Drew,* 220 Wis. 511, 265 N. W. 683, and other cases as to that effect. Inasmuch as this court has sustained actions that involved partnership accountings after the death of a partner, the argument of his counsel in this respect is regarded as labor lost. *Stehn v. Hayssen,* 124 Wis. 583, 102 N. W. 1074, is such a case. It is true that the administrator of a deceased partner was the plaintiff in that case, but if the administrator of the deceased partner may

prosecute such an action when the surviving partners are in possession of the corporate assets and business so may a surviving partner prosecute such an action when the partnership assets and business are in charge of the administrator. It is said at page 587 of the opinion: "This action is clearly within the proper jurisdiction of the circuit court, for the reason that the county court, in the settlement of the Kohler estate, cannot bring before it, or render judgment against, the surviving partner, Herman Hayssen, whose presence is essential to the ascertainment and full adjudication of the rights of all parties." The same reason applies here. That the action lies is further shown in connection with division (6) of this opinion.

(6) The appellant contends that the plaintiff at all times had a cause of action at law in *assumpsit* on account stated and of "account rendered." We have already held there was no account stated. Therefore *assumpsit* did not lie. As to "account rendered," or action "of account," it appears that such an action did at one time lie at common law. *Ozeas v. Johnson* (1806), 4 Dall. 434, 1 L. Ed. 897; *Hughes v. Woosley* (1852), 15 Mo. 492. It is stated in *Ivinson v. Hutton,* 98 U. S. 79, 25 L. Ed. 66, that "except in an action of account, which is almost obsolete, no (partnership) account can be taken at law." The action is stated in 45 Harvard Law Review, 485, to have been extended to partners between each other as early as 1390, where Year Book 13 Richard II is cited. It is said in this article, page 486, that the action is at the present time available in the common-law states of the union. By common-law states the writer meant, as we infer, states which retain the common-law pleading and practice. We are not a common-law state in that sense, and it is categorically stated in *Stehn v. Hayssen, supra,* p. 588, that "an action for partnership accounting and settlement was one which, prior to 1857, was cognizable by the court of chancery" within the meaning of sec. 330.18

(4), Stats., which means that it was there solely so cognizable under the cases construing sub. (4). To the same effect is *Pietsch v. Wegwart,* 178 Wis. 498, 508, 190 N. W. 616. In our early cases, *Shields v. Fuller,* 4 Wis. *102, and *Zimmerman v. Chambers,* 79 Wis. 20, 24, 47 N. W. 947, it is stated that one partner cannot sue the other at law. The matter is treated at some length also in *Gray v. Lord,* 226 Wis. 403, 408, 275 N. W. 432, where it is stated that, with certain exceptions, of which the instant case is not one, "so long as a partnership continues, one partner cannot maintain an action at law against . . . his copartner on account of a matter connected with the partnership."

The appellant's contention in this respect is that as the plaintiff had an action at law against James, the six-year statute of limitation, sec. 330.19 (7), applies because as the instant action is not "within that class of actions cognizable solely by a court of equity before February 28, 1857, . . . the time of the discovery of the fraud is immaterial as to all transactions prior to the amendment made by ch. 24, Laws of 1929" (which postponed the running of the six-year statute to six years from the time of the discovery of the fraud), citing *Thom v. Sensenbrenner,* 211 Wis. 208, 247 N. W. 870. But the ruling of the court in the *Stehn Case, supra,* takes the ground from this contention. However, the bearing of the statute of limitation on the case rests upon the nature of the proceedings. The action is one that arises only upon the dissolution of a partnership and the liquidation of its affairs consequent upon the dissolution. It arises upon the death of a partner, as here, or upon a mutual voluntary agreement for dissolution while the partnership is doing business, or on a petition for dissolution and liquidation at the request of one of the partners during continuance of the business. It is a proceeding in equity. 47 C. J. p. 1198, § 900. In case of dissolution by death of a partner the statute of limitation begins to run upon the death of the partner

or as soon thereafter as his personal representative is appointed. Thus, in the instant case the statute has no application, unless it may bar inquiry as to the individual transactions between the partners. In *Pietsch v. Wegwart, supra*, p. 508, it is held that among the fraud cases to which sec. 330.18 (4), Stats., applies are actions "to open or set aside fraudulent accounts." The trial court's finding that the deceased partner was guilty of fraud in concealing his salary withdrawals have already been sustained herein, and this would carry the accounting as to that item back to ten years before discovery of the fraud in respect to it. We have also held herein that upon the trial court's findings the plaintiff did not discover that fraud until after the death of James, so that item is involved from the beginning of the partnership. The other two items, sand and gravel and interest accounts, if they do not involve actual fraud involve constructive fraud and it would seem that the same rule as to the statute of limitations should apply to constructive as well as to actual frauds. The court also found, and we have herein approved its finding, that the plaintiff did not discover the facts as to these matters, and as she did not discover the facts she did not discover the constructive fraud worked upon her by the facts. It is said in *Wiley v. Wiley*, 115 Md. 646, 81 Atl. 180, in an action for an accounting between partners, that neither the statute of limitations nor laches applies so long as the partnership exists, and that would seem to be a reasonable rule. The accounting there involved apparently extended back over a period of thirty years. We are of opinion, and so hold, that neither the statute of limitations nor laches applies, in the instant case, to bar extension of the accounting back to the creation of the partnership.

(7) The appellant assigns as error that the court erroneously received evidence of the plaintiff over the objection of the appellant to her competence, on the ground that it involved transactions with a deceased person through whom

the defendant administrator derived his interest, that she did not know of the salary withdrawals of James or of the gravel transactions or of his taking of interest. We pass this without discussion as appellant's counsel do not refer to it in their brief other than to categorically assign it as error.

The appellant makes thirty separate assignments of error to the effect that thirty specific findings of fact are not supported by the evidence, and nineteen further assignments of error to the effect that nineteen of the specific conclusions of law are erroneous. We believe that the real issues of the case are sufficiently covered by what is above said.

*By the Court.*—The judgment of the circuit court is affirmed.