BANKING COMMISSION, Appellant, vs. NATIONAL SURETY
CORPORATION, Respondent.

*September 16—October 12, 1943.*

For the appellant there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *J. Gilbert Hardgrove,* all of Milwaukee.

WICKHEM, J.   Plaintiff's amended complaint alleges that plaintiff, Banking Commission, is by statute vested with the

duty of liquidating delinquent banks, and that at all times material to this action it was in possession of the property and business of the Farmers & Merchants Bank of Lena; that on or about November 2, 1933, plaintiff appointed Asa E. Buttrick special deputy commissioner of banking, as agent to assist in liquidating and distributing assets of the delinquent bank; that Buttrick continued as special deputy until about June 30, 1937; that on November 24, 1933, Buttrick as principal and defendant as surety, executed a bond providing as follows:

"We, the undersigned, jointly and severally, undertake and agree that Asa Emerson Buttrick of Farmers & Merchants Bank, Lena, Wisconsin, who has been appointed to the office of special deputy commissioner of banking will faithfully discharge the duties of his said office according to law, and will pay to the parties entitled to receive the same, such damages, not exceeding ten thousand & no/100 ($10,000) dollars, as may be suffered by them in consequence of his failure so to discharge such duties."

That Buttrick was required under sec. 220.08, Stats., to conserve, liquidate, and collect the assets of the delinquent bank, keep books of account, report the amounts of all such collections, and the status of such liquidation to the plaintiff at the end of each month, in order that plaintiff might currently be advised of the condition of the liquidation and be able to determine when payments of partial dividends to creditors would be justified; that Buttrick was required by plaintiff to turn over to his successor on or about June 30, 1937, all books, records, and assets of the delinquent bank then remaining in his hands.

It is alleged that at various times, specified in detail in an accompanying table, Buttrick collected sums which he either partially or wholly failed to report, and many of which items he converted to his own use; that these shortages were paid by defendant on or about August 15, 1942, but that the damages

for withholding calculated at six per cent amount to $1,206.69; that the shortages were not discovered until August, 1941, when an audit of Buttrick's accounts was made.

From the foregoing, it appears that plaintiff's cause of action is against the surety for damages caused by Buttrick's failure to report collections, and for withholding the sums of money which Buttrick converted to his own use. Plaintiff claims that the surety specifically promised to pay such damages as resulted from Buttrick's failure faithfully to discharge his duties; that the amount of damages for failing to report, and to account, is to be arrived at by applying legal rates of interest to each item converted or not reported from the date of default. Defendant contends that it is not liable for interest until the date of demand upon it to make good the default of Buttrick.

At the outset, certain matters may with some profit be dealt with. This is an official bond. In the Restatement of Security, introductory note, page 468, "official bond" is defined as "an instrument under seal by which a public officer undertakes to pay a sum of money if he does not faithfully discharge his office, or by which a surety undertakes that if the officer does not do so, the surety will be liable in a penal sum." Bonds fall into the category of official bonds whether they are to guarantee the faithfulness of elected or appointed public officers, or for the faithful performance of administrators, executors, receivers, or others who are directly responsible to the courts and whose bonds are required by law.

It is clear that the surety's liability depends upon the terms of his engagement. Sec. 169, Restatement of Security, states:

"Where a statute requires a public officer to furnish a bond with surety, the surety's liability for the officer's defaults is determined, within the penal sum stated in the bond, by his own undertaking whether more or less extensive than the statutory requirements, unless there is a statutory provision to the ef-

fect that an official bond shall be deemed to contain the conditions prescribed by statute."

It is also clear, sec. 181, Restatement of Security, that where a surety promises that an officer will faithfully perform the duties of his office, it assumes no liability for penalties which the law may impose upon the officer in addition to his liability for losses, in the absence of a specific promise to that effect. With reference to interest and profits on public funds, Restatement of Security, sec. 183, thus states the extent of the surety's liability for interest:

"The surety for a public officer is liable to the extent of the officer's liability for interest earned or which should have been earned on public funds and the profits made by legal investments, but the surety is not liable for profits made by an officer as a result of the illegal use of public funds."

Comment on this section states that the surety is liable for the interest earned by the legal use of public funds only where the principal is authorized to invest these funds. If there is a duty or power to make investments, and such an investment is made (as was the case in *State v. McFetridge,* 84 Wis. 473, 54 N. W. 1, 54 N. W. 998) there is a duty on the part of the principal to account for the interest, and the surety is liable for a default in this respect for the same reason that he is liable for a failure to account for the principal. In such cases the interest attaches as an accretion to the public funds for which the principal is liable to account, and the liability for interest is a part of the principal obligation. Where, however, as here, there is no power or duty to invest, and the only duty of the liquidator or receiver is to hold the funds, the principal has no liability for interest as such. It follows that upon an embezzlement of the principal in such a case the surety's liability is for the principal sum and not for interest. The surety here has specifically undertaken to be liable for damages caused generally by the official misfeasance or nonfeasance of his prin-

cipal and it is claimed that interest could properly be used here as a measuring stick for damages arising out of the various failures and defaults of Buttrick. We are unable to perceive any justification under the rules of suretyship and those involving the construction of contracts for the use of interest to measure damage up to the time of final accounting. The funds collected by the defaulting liquidator were not authorized to be reinvested nor were they reinvested. The accounting was not required until June 30, 1937. Had the principal upon that date turned over the sums collected we discover no basis upon which he could have been treated as in default unless it was for failure to report certain of the items. Not being authorized or obliged to invest, interest could not be charged on any part of the sum in his hands on the theory that he had failed in his public duty. While as suggested in the *McFetridge Case, supra,* and held in *Milwaukee v. Drew,* 220 Wis. 511, 265 N. W. 683, if he had actually put the amounts collected at interest in violation of his duty, he would be required upon ordinary principles of honesty and fair dealing to pay back the amount by which he had enriched himself, such amounts would not be an accretion to the public fund handled and would not be covered by his official bond. The doctrine of these cases is supported by the quotation heretofore made from sec. 183, Restatement of Security.

It is alleged in the complaint that Buttrick failed to report the collection of certain items on the first day of the month following their respective collection as required by his instructions. This is the extent of the allegation in this respect, and on the basis of this very scanty showing, we are asked to measure with interest the damages for the breach of Buttrick's duty to report. The allegations are much too meager to amount to a showing of special damage arising out of the failure to report. Such damages would appear offhand to border on the speculative, and in any case, the right to damages would not run from the time of failure to report. The

only result of such a failure might be delay in declaring dividends to the creditors of the bank. There is no allegation of facts tending to show that dividends would have been declared at an earlier date had the funds been properly reported, how much the dividends would have been or what damages have been sustained by the creditor on whose behalf the commission is acting. In the present state of the pleadings, plaintiff's contention cannot be considered.

On June 30, 1937, there was a failure on the part of Buttrick to account to the commission for the assets which he had collected and the next question is whether interest upon the shortages ought to be charged against the surety from and after June 30, 1937, or whether, as the surety contends, no interest should be charged against it until the date of demand upon it which was sometime in June, 1942. Here, again, it is necessary to draw attention to the distinction that must always be preserved between interest claimed as a part of the principal's obligation to account and interest charged against the surety as damages for failing to make good the default of his principal. Interest properly charged as a part of the principal's obligation to account is, of course, collectible regardless of demand, up to the amount of the penalty or limit of the official bond. We have already dealt with that problem, our view being that interest, under the circumstances of this case, was no part of Buttrick's principal obligation. On June 30, 1937, Buttrick was required for the first time, and for the first time failed to account to the commission for funds in his hands. We have no doubt that from that time on Buttrick was liable for interest upon his defalcations, but is the surety, who knew nothing about the default and was in no position to find out about it, to be held liable for damages for a failure to make good Buttrick's default until it has had a demand made upon it, or at least until it has had notice of the default? We hold that upon an official bond, where the engagement is to pay damages arising out of the failure by the

officer principal faithfully to discharge his official duties there is no liability upon the surety to pay interest upon the amount in default until demand or notice. In such a situation, interest does and should run from the surety's own default. It is in these cases that the surety may be liable for interest running the amount recoverable beyond the penalty of the bond, the penalty being a limit merely to the surety's liability for the principal's default. Upon this point see *Whereatt v. Ellis,* 103 Wis. 348, 79 N. W. 416; 13 Columbia Law Review, 756. Where a surety has become liable for the payment of a sum certain or a computable sum upon a specified date, the surety properly has the burden of seeking out the creditor and paying him and interest should run against the surety from the due date without demand. This is because the surety himself is in default from and after the due date. In the case of official bonds, however, where there is a general obligation on the part of the surety to respond for any malfeasance or nonfeasance in office, the surety ought not to be considered in default until it is notified that its principal has been faithless to his trust. Applied to this branch of the case, plaintiff is not asking that the surety make good its principal's breach of the official bond because that was complete on June 30, 1937. What it is asking is that the surety pay interest as damages for the principal's failure to make good his own default. The latter failure by the principal is not an official misfeasance or nonfeasance nor a breach of the official bond. Buttrick went out of office at the time of the accounting. What he did after that could not be treated as an official default under his bond. While Buttrick is liable for interest because of his default in making good his breach, the surety is put in default only by notice or demand and interest runs only from the time of such default. While there is a conflict in the cases, the majority favor the rule that we have stated. The cases will be found collected in a note in 89 A. L. R. 1314. We shall not extend this opinion by reviewing the authorities in detail. An

excellent discussion of the point is contained in *Clark County v. Howard,* 58 S. D. 457, 237 N. W. 561.

It is contended by plaintiff that the *McFetridge* and *Whereatt Cases, supra,* are authority against this position. This is clearly not true of one branch of the *McFetridge Case.* The interest for which the sureties were held liable there was that collected upon lawful investments by the state treasurer and held to be an accretion to the public funds held by him. Failure to account for this interest would be a breach of the bond. It is suggested in the *McFetridge Case* and flatly held in the *Drew Case, supra,* that the surety is not liable for sums earned by the principal through the unlawful investment of funds. If that is true, neither is he liable for interest in a situation where the principal is neither authorized nor required to put at interest the sums committed to his care.

It is true that upon motions for rehearing the court stated that interest was properly allowed upon moneys received by the state treasurers from the date of the expiration of their respective terms of office. The court did not discuss the problem of suretyship specifically and appears to have assumed that if the treasurer was liable for interest, the surety was equally so. However, the most that could be argued for the case would be a qualification to what has been stated here in situations where the principal upon an official bond had a fixed term with a specific duty to account for a liquidated or computable sum at the expiration of this term, or where there were fixed periods of accounting during the term. In such a case it could be claimed with some force that so far as the duty of accounting is concerned, the surety has notice in advance of the time when the duty must be discharged and is not entitled to further notice. Upon this we express no opinion. This, of course, would not apply to unliquidated damages flowing from other types of breach or to cases of indefinite tenure where the duty of the principal is to account upon demand of the creditor.

The *Whereatt Case, supra,* is cited by plaintiff as authority for the position that interest against the surety may run without demand, but the *Whereatt Case* did not involve an official bond and is not in point here except as it recognizes without specifically naming official bonds, the very distinction between types of bonds, upon which our opinion here is predicated. By requiring the surety in that case to pay interest on the *penalty* from and after the principal's default (in a sum larger than the penalty) the court recognized that the interest allowed was damages for the surety's own default. The fact that the bond was one of a type in which the surety was in default without a demand, and that interest was made to run from the date of the principal's breach, does not make the case an authority for plaintiff.

*By the Court.*—Order affirmed.